**Ruth M. FRITSCH, Plaintiff,**

v.

**CITY OF CHULA VISTA;  John Kaheny; Ann Moore;  Candy Emerson, Defendants.**

No.  98–CV–0972–E(CGA).

United States District Court,
S.D. California,
San Diego Division.

July 14, 1999.

George J. Ronis, Law Office of George John Ronis, Chula Vista, CA, for plaintiff.

Phillip L. Kossy, Paul Cadena, Littler Mendelson, San Diego, CA, for defendants.

## OPINION AND ORDER

AARON, United States Magistrate Judge.

### I.

#### *Introduction*

Plaintiff Ruth Fritsch was employed as an Assistant City Attorney for the City of Chula Vista from 1988 until August of 1997, when she was terminated for refusing to submit to a psychiatric evaluation ordered by Defen-

dant Kaheny, the City Attorney of Chula Vista. At the time of the Plaintiff's termination, Defendant Moore was Senior Assistant City Attorney and Defendant Emerson was the Director of Human Resources for the City.

At his deposition, Defendant Kaheny agreed that the Plaintiff had been an excellent employee, and had conducted herself in the highest professional manner, consistent with the highest professional standards, from 1988 until June 10, 1997. On that date, the Plaintiff was involved in a verbal altercation with another attorney in a courtroom, before court was in session. Plaintiff's Letter Brief dated March 5, 1999, at p. 1.[1]

According to the Plaintiff, the sole basis for Defendants demanding that she submit to a psychiatric examination was her conduct on June 10 and shortly thereafter. The Plaintiff alleges that Defendants Kaheny and Emerson "irrationally perceived [her] as having diabetes and a psychological disability," and demanded that she submit to a psychiatric examination, and possibly to additional medical testing, to determine whether or not she was fit for duty as an Assistant City Attorney. Plaintiff's Letter Brief at p. 1. When Plaintiff refused to submit to the examination, her employment with the City of Chula Vista was terminated.

In her First Amended Complaint, Plaintiff claims unlawful employment discrimination, under Title I of the Americans with Disabilities Act and Title I of the Civil Rights Act of 1991; retaliation, under the Civil Rights Act of 1964 and 42 U.S.C. § 1983; and violation of her substantive and procedural due process rights, under the Fourteenth Amendment to the United States Constitution. She also alleges violations of the California Fair Employment and Housing Act; invasion of privacy; defamation;[2] and breach of an implied contract of employment.

### II.

#### A. *The Disputed Discovery Requests*

On September 17, 1998, Defendant Ann Moore served her first set of interrogatories

---

1. There is nothing in the record regarding the specifics of the altercation. Therefore, this court does not feel that it is at liberty to discuss them further here.

2. The defamation claim was dismissed by the District Judge, on Plaintiff's motion, in an order filed on June 9, 1999.

on Plaintiff. Interrogatory Number 4 requested that Plaintiff,

> Identify by name, address and telephone number each and every health care provider which has provided any service to you for any purpose from June 1, 1988, to the present.

Plaintiff objected to this interrogatory as overbroad, unduly burdensome, seeking information that is not relevant nor reasonably calculated to lead to admissible evidence, seeking information solely for the purpose of harassing Plaintiff, and seeking information that is protected by Plaintiff's right to privacy and the Doctor–Patient privilege.

On October 1, 1998, Defendants issued subpoenas to a number of Plaintiff's health care providers. Subpoenas were served on Kaiser Foundation Hospital (hospital records), Kaiser Southern California Permanente Medical Group (outpatient records), Henry N. Ervin, M.F.C.C., Thomas N. Rusk, M.D. (a psychiatrist), Kaiser Hospital/SCPMG (billing records), and Kaiser Permanente Medical Care Program ("psychosocial" records). The subpoenas required the production of the following:

> Any and all documents pertaining to the examination, diagnosis, care, and treatment of **Ruth M. Fritsch a.k.a. Hargrove,** from her first visit to your offices to the present. These documents shall include, but not be limited to the following: medical and/or psychological records; results of any tests or other evaluations of any kind; reports; correspondence; memoranda; letters; charts; notes; video and/or audio tape recordings; and any other document, thing or object in your custody, possession and/or control which in any way pertains to **Ms. Fritsch, a.k.a. Hargrove** ...

Defendants obtained the identities of Plaintiff's health care providers from her employee medical file, which was in Defendant City of Chula Vista's possession, and provided the information to Defendants' counsel without Plaintiff's authorization. Although copies of the subpoenas were served by mail on counsel for Plaintiff, Plaintiff's counsel maintains that he never received the copies, and that Plaintiff was unaware that Defendants' had subpoenaed her medical records

until one of Plaintiff's health care providers called Plaintiff to ask her if she had any objection to the release of the documents. Once Plaintiff's counsel obtained copies of the subpoenas, he contacted all of the health care providers to whom subpoenas had been sent and requested that they not produce documents pending Plaintiff's attempt to obtain a protective order. However, Kaiser Foundation Hospital and Kaiser Permanente Medical Care Program had already produced documents to Defendants. Plaintiff's Letter Brief at p. 2. In her motion for a protective order, Plaintiff contests the propriety of Defendants' providing the names of Plaintiff's health care providers to their attorney, and the use of that information by Defendants' attorney. A hearing on this issue was held on May 7, 1999.

Plaintiff has moved for a protective order 1) precluding Defendants from obtaining any medical/psychological documentation or information relating to Plaintiff; 2) requiring Defendants to collect all documents, and all copies of any documents, that belong to Plaintiff's confidential medical file maintained by the City of Chula Vista and to deposit the entire file with the Court to be sealed; and 3) requiring Defendants to produce all medical documents obtained through the subpoenas, and to provide Plaintiff with copies of all documents obtained.

On January 14, 1999, Defendant City of Chula Vista served its second set of requests for production of documents on Plaintiff. Request Number 5 asked for,

> Each and every document pertaining to each and every mental and psychological disorder that you had from January 1, 1990, to the present, as the term "mental and psychological disorder" is used within the context of the Americans with Disabilities Act and its implementing regulations.

Request Number 6 asked for,

> Each and every document pertaining to each and every mental and emotional condition for which you sought treatment from any health care provider from January 1, 1990, to the present.

Plaintiff objected to both requests for production as vague, ambiguous, compound,

overbroad, seeking information not relevant to the present lawsuit, not reasonably calculated to lead to admissible evidence, and designed solely to harass her. Plaintiff also objected to the inquiries on the ground that such documents are protected pursuant to the psychotherapist-patient privilege, the doctor-patient privilege, and Plaintiff's right to privacy. Finally, Plaintiff responded that the term "mental and emotional condition" is vague and ambiguous.

## B. *The Parties' Positions*

Defendants maintain that the information and documents sought are discoverable for a number of reasons. First, Defendants argue that Plaintiff's emotional condition is at issue in the present case because Plaintiff has repeatedly asserted that Defendants, and in particular, Defendant Kaheny, "irrationally" regarded Plaintiff as suffering from some disability. Defendants argue that they are entitled to obtain information which may or may not allow them to counter this contention.

Defendants also maintain that by claiming to have suffered and to continue to suffer from "severe emotional distress," Plaintiff has placed her mental and emotional condition at issue. Defendants assert that they are entitled to "explore whether this is true, and whether or not [Plaintiff] admittedly or arguably suffered from any pre-existing distress or underwent events or other factors that may have produced prior emotional distress." Defendants' Letter Brief dated March 5, 1999, at p. 4.

Further, Defendants point out that Plaintiff has filed a defamation claim alleging that Defendants made statements implying that Plaintiff suffered from a "debilitating psychological condition," and that Defendants have asserted the affirmative defense that any such statements were true. Defendants argue that they are entitled to the information and documents to defeat Plaintiff's claim and to establish their affirmative defense.[3]

With regard to privilege, Defendants argue that the physician-patient privilege is not

recognized by federal statute, rule or common law, and that while the psychotherapist-patient privilege has been recognized, Plaintiff has waived that privilege by placing her emotional/psychological condition in controversy. Defendants also argue that any right of privacy Plaintiff may have must be weighed against Defendants' competing interests, and that Plaintiff has waived any right to privacy in her medical and psychological records by placing her emotional/psychological condition at issue.

Plaintiff maintains that because Defendants did not base their decision to require a psychiatric evaluation on any medical or psychological condition of Plaintiff, the information and documents sought are neither relevant nor reasonably calculated to lead to admissible evidence. Specifically, Plaintiff points out that in order to prevail on Plaintiff's ADA claim, Defendants will have to establish that they had a "reasonable belief, based on objective evidence," that Plaintiff's ability to perform her essential job functions would be impaired by a medical condition. Plaintiff contends that the only evidence that is relevant to this issue is the evidence Defendants actually relied on at the time. She maintains that because Defendant Kaheny admitted that until June 10, 1997, he believed Plaintiff to be an excellent "fine knock" attorney, and because Defendants have repeatedly claimed that the sole basis for requiring Plaintiff to undergo a psychiatric examination was her alleged conduct on June 10, 1997 and shortly thereafter, any medical or psychological treatment Plaintiff may have previously received is irrelevant to Defendants' decision to demand a psychiatric evaluation of Plaintiff.

Plaintiff also argues that she has not placed her mental/emotional condition at issue by including a claim for emotional distress damages in her complaint. Plaintiff notes that her emotional distress claim is "limited to the emotional distress she suffered in being asked to submit to a psychiatric evaluation, and the subsequent stress

---

**3.** As noted above, the defamation claim was dismissed on June 9, 1999, rendering this argument moot.

arising from her having to choose between keeping her job or allowing the Defendants to invade her privacy for no logical reason." Plaintiff's Letter Brief at p. 5. Plaintiff states that she is not claiming any ongoing emotional distress arising from the incident. Plaintiff's Letter Brief at p. 5. Further, Plaintiff argues that the purpose of this lawsuit is to vindicate the rights of employees to maintain the privacy of their medical/psychological records, and that if, in order to do so, Plaintiff must submit to Defendants' "broad based inquiry into her entire medical and psychological history, the goal would be turned on its head ..." Plaintiff's Letter Brief at p. 5. Finally, Plaintiff contends that the psychological information Defendants seek is covered by the psychotherapist-patient privilege, and is therefore protected from disclosure.

## III.

### Discussion

#### A. The Applicable Law

In her complaint, Plaintiff alleges violations of both federal and state laws. Federal Rule of Evidence 501 states in part,

> [T]he privilege of a ... person ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience. However, in civil actions and proceedings with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a ... person ... shall be determined in accordance with State law.

While Rule 501 does not specify which law of privilege to apply in a federal question case, such as the present one, in which there are also state law claims pursuant to supplemental jurisdiction, all courts which have addressed this issue have held that the federal law of privilege should be applied. See Vanderbilt v. Town of Chilmark, 174 F.R.D. 225, 226–27 (D.Mass.1997) (citations omitted).

#### B. Psychological/Psychiatric Records

In Jaffee v. Redmond, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), the Supreme Court recognized for the first time a psychotherapist-patient privilege. In that case, the

petitioner was the administrator of the estate of Ricky Allen, who was shot and killed by Redmond, a police officer, while Redmond was on duty. Respondents were Redmond and the Village of Hoffman Estates, Redmond's employer. The lawsuit alleged violation of Allen's constitutional rights by use of excessive force, and sought damages under 42 U.S.C. § 1983 and the Illinois wrongful death statute.

During pretrial discovery, the Petitioner learned that Officer Redmond had participated in approximately 50 counseling sessions with a clinical social worker after the shooting. Petitioner requested production of the therapist's notes of the sessions, for use in cross examination. The district court rejected Redmond's argument that the contents of the conversations were protected against disclosure by a psychotherapist-patient privilege. Despite the court's ruling, neither the therapist nor Redmond complied with the court's order to disclose the contents of the notes. At the end of the trial, the judge instructed the jury that the refusal to turn over the notes had no legal justification, and that the jury could therefore presume that the contents of the notes would be unfavorable to respondents. The jury awarded $45,000.00 on the federal claim, and $500,000.00 on the state law claim. See Id. at 5–6, 116 S.Ct. 1923.

The court of appeals reversed and remanded for a new trial. That court concluded that under Rule 501 of the Federal Rules of Evidence, both "reason and experience" compelled recognition of a psychotherapist-patient privilege. However, the court of appeals stated that the privilege would not apply if, "in the interests of justice," the need for disclosure of the contents of a patient's counseling sessions outweighs that patient's privacy interests. Id. at 6–7, 116 S.Ct. 1923. Applying that balancing test, the court of appeals noted that petitioner's need for the contents of the counseling sessions was diminished by the fact that there were a number of eye witnesses to the shooting, while Officer Redmond's privacy interests were substantial. The Court concluded that the trial court had erred by refusing to protect from discovery the confidential commu-

nications between Redmond and the social worker.

In addressing whether a privilege protecting confidential communications between a psychotherapist and patient " 'promotes sufficiently important interests to outweigh the need for probative evidence ...,' " the Supreme Court first reviewed the common law principles underlying testimonial privileges. The court noted that,

> " 'For more than three centuries it has now been recognized as a fundamental maxim that the public ... has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exceptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.' "

*Jaffee,* 518 U.S. at 9, 116 S.Ct. 1923 (quoting *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950) (quoting J. Wigmore, Evidence § 2192, p. 64 (3d Ed.1940)), and citing *United States v. Nixon,* 418 U.S. 683, 709, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)).

The court commented that exceptions to the general rule that the public has a right to "every man's evidence" may be justified by a " 'public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.' " *Jaffee,* 518 U.S. at 9, 116 S.Ct. 1923 (quoting *Trammel v. United States,* 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980)) (quoting *Elkins v. United States,* 364 U.S. 206, 234, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) (Frankfurter, J., dissenting)). The court went on to observe that, "[l]ike the spousal and attorney-client privileges, the psychotherapist-patient privilege is 'rooted in the imperative need for confidence and trust.' " *Jaffee,* 518 U.S. at 10, 116 S.Ct. 1923 (quoting *Trammel,* 445 U.S. at 51, 100 S.Ct. 906). The court distinguished treatment for medical problems from psychotherapy, stating that treatment for physical ailments can often proceed successfully on the basis of a physical examination, objective information provided by the

patient, and the results of diagnostic tests, while,

> [e]ffective psychotherapy, by contrast, depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. *For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.*

*Jaffee,* 518 U.S. at 10, 116 S.Ct. 1923 (emphasis added).

The court noted that in recommending that Congress recognize a psychotherapist-patient privilege in the Federal Rules of Evidence, the Judicial Conference Advisory Committee had observed that a psychotherapist's ability to help his or her patients,

> "... is completely dependent upon [the patient's] willingness and ability to talk freely. This makes it difficult if not impossible for [a psychiatrist] to function without being able to *assure* ... patients of confidentiality and, indeed, privileged communication. Where there may be exceptions to the general rule ... there is wide agreement that confidentiality in a sine qua non for successful psychiatric treatment."

*Id.* (emphasis added) (citation omitted). The *Jaffee* court concluded that by protecting confidential communications between a psychotherapist and patient, the proposed privilege would serve important interests. *See Id.* at 11, 116 S.Ct. 1923.

The court next noted that an evidentiary privilege must also " 'serv[e] public ends,' " *Id.* (quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)), and observed that just as the attorney-client privilege " 'encourage[s] full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and administration of justice,' " and the spousal privilege " 'furthers the important public interest in marital harmony,' " the

psychotherapist-patient privilege "serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem." *Jaffee*, 518 U.S. at 11, 116 S.Ct. 1923 (quoting *Upjohn*, 449 U.S. at 389, 101 S.Ct. 677, and *Trammel*, 445 U.S. at 53, 100 S.Ct. 906). The court concluded, "The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance." *Jaffee*, 518 U.S. at 11, 116 S.Ct. 1923.

The *Jaffee* court opined that the likely evidentiary benefit that would result from not recognizing a psychotherapist-patient privilege was "modest." *See Id.* In this context, the court stated,

> If the privilege were rejected, confidential conversations between psychotherapists and their patients would surely be chilled, particularly when it is obvious that the circumstances that give rise to the need for treatment will probably result in litigation. Without a privilege, much of the desirable evidence to which litigants such as petitioner seek access—for example, admissions against interest by a party—is unlikely to come into being. This unspoken "evidence" will therefore serve no greater truth-seeking function than if it had been spoken and privileged.

*Id.* at 11–12, 116 S.Ct. 1923.

The *Jaffee* court rejected the balancing approach taken by the court of appeals, reasoning that if the confidentiality of psychotherapist-patient communications were made contingent upon a trial court's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure, the effectiveness of the privilege would be "eviscerate[d]." The court stated,

> As we explained in *Upjohn*, if the purpose of the privilege is to be served, the participants in the confidential conversation "must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."

*Id.* at 17–18, 116 S.Ct. 1923 (quoting in part *Upjohn*, 449 U.S. at 393, 101 S.Ct. 677).

The *Jaffee* court did not specifically address the issue in the present case, i.e., under what circumstances the privilege will be waived. However, in a footnote, the court acknowledged that there would be waiver in some circumstances, stating, "[W]e do not doubt that there are situations in which the privilege must give way, for example, if a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist." *Jaffee*, 518 U.S. at 18 n. 19, 116 S.Ct. 1923.

It is against this backdrop that this Court considers whether Plaintiff's psychological records are protected by the psychotherapist-patient privilege, or rather, as Defendants maintain, Plaintiff has waived her psychotherapist-patient privilege by claiming emotional distress damages, thereby placing her emotional/psychological condition at issue in the present litigation. There is no authority from the Court of Appeals for the Ninth Circuit on point.

### 1. *The Case Law Prior to Jaffee*

Prior to the decision in *Jaffee*, many jurisdictions recognized a psychotherapist-patient privilege. In those jurisdictions, courts generally applied a balancing test to determine whether or not the relevance of a patient-litigant's psychological records outweighed the person's right to privacy in the records. For example, in *Price v. County of San Diego*, 165 F.R.D. 614 (S.D.Cal.1996), which was decided shortly before the Supreme Court issued its opinion in *Jaffee*, the court found that there was a federal common law privilege for psychotherapist-patient communications, but held that ". . . where the privileged information is relevant to the claims raised by a patient-litigant, and the relevance outweighs the privacy interest, the privilege will be waived." *Id.* at 622. However, as noted above, the use of a balancing approach was specifically rejected by the *Jaffee* Court.

Other pre-*Jaffee* decisions did not raise the issue of privilege at all, but rather, put the burden on the party seeking to prevent the discovery of psychological records to show

that a request for such records should be denied pursuant to Rule 26(c). *See, e.g., Bridges v. Eastman Kodak Company,* 850 F.Supp. 216 (S.D.N.Y.1994); *Bottomly v. Leucadia National,* 163 F.R.D. 617 (D.Utah 1995).

## 2. Waiver of the Psychotherapist–Patient Privilege

■ Since *Jaffee* was decided, two lines of cases have developed addressing the circumstances under which the psychotherapist-patient privilege will be waived. The first line of cases takes a broad view, finding waiver where the court concludes that the patient-litigant has placed his or her mental or emotional condition "at issue." Within this group, some courts find that one places one's mental or emotional condition at issue merely by claiming damages for emotional distress, while others require more. The other line of cases takes a significantly narrower view, finding waiver only where the privileged communications themselves are put in issue by the patient-litigant.

### a. Cases Finding Waiver Where Mental or Emotional Condition is Put in Issue

*Sarko v. Penn–Del Directory Company,* 170 F.R.D. 127 (E.D.Pa.1997), involved a defendant's motion to compel an independent mental examination of the plaintiff and to compel the plaintiff to authorize release of the records of her treating psychiatrist. The plaintiff was a former employee of the defendant company who had been terminated for chronic tardiness. In her lawsuit, the plaintiff claimed that her termination violated the Age Discrimination in Employment Act of 1967, Title VII, and the Americans with Disabilities Act (ADA). The defendants' discovery motions related to the ADA claim.

The plaintiff alleged that during the period of her employment, she had suffered from clinical depression which required medication. She further alleged that the medication made it difficult for her to wake up in the morning, that defendant was aware of this situation, and that despite her request for a reasonable accommodation, the defendant had unlawfully fired her. *See Id.* at 129.

The defendant in *Sarko* argued that the plaintiff had waived any applicable privilege by placing her mental condition at issue. The *Sarko* court noted that in *Jaffee,* the Supreme Court had not addressed waiver of the privilege, "explicitly leaving the contours of the new privilege to be fleshed out over time on a case-by-case basis." *Sarko,* 170 F.R.D. at 130. The court held that placing one's mental condition at issue in a civil lawsuit waives the privilege, and found that the plaintiff had done so.

The *Sarko* court explained that it had reached these conclusions for several reasons. First, courts in the Eastern District of Pennsylvania had recognized a qualified privilege prior to the decision in *Jaffee,* and had held that a litigant could waive the privilege by placing his or her mental condition in issue. *See Sarko,* 170 F.R.D. at 130 (citing *Topol v. Trustees of University of Pennsylvania,* 160 F.R.D. 476, 477 (E.D.Pa.1995)). Second, the *Sarko* court noted that in *Jaffee,* the Supreme Court had analogized the policy considerations supporting recognition of the privilege to those underlying the attorney-client privilege, and observed that the attorney-client privilege is waived when the advice of counsel is put in issue in litigation. *See Sarko,* 170 F.R.D. at 130 (citations omitted). Finally, the *Sarko* court opined that allowing a plaintiff " 'to hide ... behind a claim of privilege when that condition is placed directly at issue in a case would simply be contrary to the most basic sense of fairness and justice.' " *Id.* (quoting *Premack v. J.C.J. Ogar, Inc.,* 148 F.R.D. 140, 145 (E.D.Pa.1993)).

The *Sarko* court held that the plaintiff had placed her confidential communications with her psychotherapist "directly at issue" by claiming that her clinical depression rendered her a "qualified individual with a disability" within the meaning of the ADA. The court concluded that she would be required to authorize the release of "all records that contain confidential communications with her psychiatrist that are relevant to her mental condition during the time she was in Defendant's employ." *Sarko,* 170 F.R.D. at 130.

In *Doolittle v. Ruffo,* 1997 WL 151799 (N.D.N.Y.1997), the plaintiff, citing *Jaffee,* moved for the return of all medical, hospital and psychological records pertaining to her that had been produced to defendants' counsel and experts. The court noted that the *Jaffee* court had rejected the balancing test previously applied by the Second Circuit, and stated that the issue was not whether a psychotherapist-patient privilege exists, but rather, whether the plaintiff had waived the privilege. In concluding that there had been a waiver, the court pointed out that the plaintiff claimed to have undergone treatment for extreme emotional distress. The court also said that the plaintiff had waived the privilege by notifying the court that she intended to call her therapist as a witness at trial. *See Id.* at *2–3.

In *Vann v. Lone Star Steakhouse & Saloon of Springfield, Inc.,* 967 F.Supp. 346 (C.D.Ill.1997), a sexual harassment case under Title VII, the plaintiff alleged that the general manager of the Lone Star Steakhouse, her former employer, had engaged in offensive and unwelcome touching and had made suggestive comments to plaintiff and others. She claimed to have lost her job and to have suffered both physical and emotional injury as a result of the general manager's conduct. The plaintiff disclosed her psychotherapist as an expert witness, and stated that her therapist would testify and make "assessment of Plaintiff's psychological response to the events surrounding this cause of action." *Id.* at 348. Both the plaintiff and her therapist objected to defendants' request for production of the therapist's records. Citing *Sarko,* the *Vann* court found that the plaintiff had waived her privilege " ... by placing her mental condition in issue and by disclosing [her therapist] as an expert witness who will give opinion testimony at trial." *Id.* at 349–50.

In *Equal Employment Opportunity Commission v. Danka Industries, Inc.,* 990 F.Supp. 1138 (E.D.Mo.1997), another sexual harassment case under Title VII, the defendants sought to discover records of plaintiffs' former health care providers. In response, the plaintiffs claimed the protection of the psychotherapist-patient privilege. Citing *Vann* and *Sarko,* the *EEOC* court observed that other courts had found waiver of the privilege when the patient-plaintiff's mental condition is made an issue in the litigation. The *EEOC* court also held that because the plaintiff had disclosed her psychotherapist as an expert witness who would offer opinion testimony at trial, the psychotherapist's records were subject to discovery and were not protected by the privilege. *See Id.* at 1142.

The *EEOC* court acknowledged that in *Vanderbilt v. Town of Chilmark,* 174 F.R.D. 225 (D.Mass.1997), the court had taken a narrower view of the circumstances under which the privilege would be deemed waived, (see discussion, *infra*), but stated that it agreed with the broader interpretation of waiver in *Vann.* The *EEOC* court reasoned that the mental condition of the plaintiffs was "directly related" to the issue of damages because they were seeking damages for emotional distress resulting from the alleged sexual harassment. The court asserted that the defendant was "entitled to discover to what extent the plaintiffs' mental condition, prior to the alleged harassment, may have contributed to any emotional distress for which they now seek [damages]," and concluded that because the plaintiffs were seeking such damages, "the existence and content of prior psychotherapist-patient discussions directly relate to whether the plaintiffs' prior mental condition was a contributing factor." *Id.*

The *EEOC* court stated that it believed that analogizing waiver of the psychotherapist-patient privilege to waiver of the attorney-client privilege was appropriate, and concluded that, "the advice given by a psychotherapist is directly made an issue in an emotional damages claim just as the advice given by an attorney is directly made an issue in an attorney malpractice claim." The court also determined that fairness required a waiver of privilege, stating, "Plaintiffs cannot rely on advice given by certain psychotherapists to support their claims while at the same time expect to keep confidential advice given by other psychotherapists that may weaken their claims." *Id.*

In *Fox v. Gates Corp.,* 179 F.R.D. 303 (D.Colo.1998), an employment discrimination case, the plaintiff sought damages for emo-

**623**

tional distress, pain and suffering, humiliation, embarrassment and anguish. The plaintiff did not intend to call any of her health care providers to testify in support of her claim for emotional distress damages. The defendant sought to compel discovery of the plaintiff's health care providers and to compel medical releases, and requested that the court order an independent medical examination (IME), arguing that the plaintiff had put her mental condition in issue by asking for damages for emotional distress.

The *Fox* court noted that in *Dixon v. City of Lawton*, 898 F.2d 1443 (10th Cir.1990) (a pre-*Jaffee* case in which the plaintiff sued police officers pursuant to 42 U.S.C. § 1983 for the shooting death of her son), the Court of Appeals for the Tenth Circuit had adopted the approach set forth by the Supreme Court in Model Rule 504. That Rule would have created a p psychotherapist-patient privilege, but contained an exception for communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which the patient relied upon the condition as an element of his claim or defense. *See Fox*, 179 F.R.D. at 306 (citing *Dixon*, 898 F.2d at 1450). In *Dixon*, the court found that the plaintiff had waived any psychotherapist-patient privilege "as those communications may lead to the discovery of admissible evidence regarding plaintiff's present claim for emotional distress dam-

ages." *Id.* The *Fox* court opined that *Jaffee* did not require a different result, pointing out that the *Dixon* court had not engaged in the prohibited balancing test, but rather, had "adopted a rule that a plaintiff who relies on her mental condition as an element of her claim may not assert the psychotherapist-patient privilege to preclude a defendant from obtaining discovery of her mental health records." *Id.* at 306. The *Fox* court held that the defendant was entitled to discovery of the plaintiff's psychotherapy records.[4]

In *Lanning v. Southeastern Pennsylvania Transportation Authority*, 1997 WL 597905 (E.D.Pa.1997), the court granted the defendant's motion to compel production of the plaintiffs' medical and psychiatric records. The plaintiffs claimed that the records were privileged and argued that because the plaintiffs had stipulated that they would not seek damages for psychiatric/psychological injury and they would not offer expert testimony in support of their emotional distress claim, and because they did not seek damages for treatment of emotional distress, and did not allege an independent claim for infliction of emotional distress, they had not placed their mental condition at issue. *See Id.* at *1. The court's response to this argument was that the plaintiffs were relying on case law "which addresses the *more restrictive* issue of whether or not to compel the mental exami-

---

4. Interestingly, and in this Court's view, inconsistently, the *Fox* court denied the defendant's request that the plaintiff ordered to undergo an IME regarding her mental condition. The defendant maintained that the plaintiff had placed her mental condition "in controversy" within the meaning of Rule 35 of the Federal Rules of Civil Procedure by claiming emotional distress damages. Rule 35(a) provides in pertinent part, "**Order for Examination.** When the mental or physical condition ... of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner." The *Fox* court found that the plaintiff had *not* placed her mental condition in controversy merely by making a "garden variety" claim for emotional distress damages.

The *Fox* court correctly noted that a minority of courts had held that a plaintiff places her mental condition "in controversy" under Rule 35(a) by claiming emotional distress damages, *Id.* at 307 (citations omitted), and that most courts would

not require a plaintiff to submit to a mental examination "unless one or more of the following factors is also present: 1) plaintiff has asserted a specific cause of action for intentional or negligent infliction of emotional distress; 2) plaintiff has alleged a specific mental or psychiatric injury or disorder; 3) plaintiff has claimed unusually severe emotional distress; 4) plaintiff has offered expert testimony in support of her claim for emotional distress damages; and 5) plaintiff concedes that her mental condition is 'in issue' within the meaning of Fed.R.Civ.P. 35(a)." *Id.* (citing *Turner v. Imperial Stores*, 161 F.R.D. 89, 93–95 (S.D.Cal.1995)) (citations omitted in original); *Smith v. J.I. Case Corp.*, 163 F.R.D. 229, 230 (E.D.Pa.1995); *Bridges*, 850 F.Supp. at 221–22.

The *Fox* court determined that none of these factors was present in the case, and rejected the defendant's argument that the amount of damages the plaintiff was seeking for emotional distress damages justified a court-ordered IME under Rule 35(a). *See Fox*, 179 F.R.D. at 308 (citing *Turner*, 161 F.R.D. at 97).

nation of a party under Fed.R.Civ.P. 35(a)." *Id.* at *2 (emphasis added).[5] Citing a pre-*Jaffee* case in which the court applied the now prohibited balancing test, the *Lanning* Court held that the plaintiffs had placed their mental condition at issue, and had waived the psychotherapist-patient privilege. *See Id.* (citing *Lowe v. Philadelphia Newspapers, Inc.*, 101 F.R.D. 296, 298 (E.D.Pa.1983)).

Finally, in *Sidor v. Reno*, 1998 WL 164823 (S.D.N.Y.1998), the plaintiff alleged discriminatory treatment by her employer, the F.B.I., based on her being deaf. The government requested disclosure of the treatment records of the plaintiff's former psychologist. The plaintiff claimed that the records were privileged, and that since she did not intend to call her therapist as a witness or introduce the records in evidence, she had not waived the privilege. The defendant argued that the plaintiff had waived the privilege by claiming emotional distress damages.

The *Sidor* court noted that since *Jaffee* was decided, a number of courts had addressed the issue of whether a plaintiff waives the psychotherapist-patient privilege by seeking damages for emotional distress, and stated that, "[w]hile not dispositive," the greater number of cases had found waiver under such circumstances. *Id.* at *2 and n. 3 (citations omitted). The court commented that a "fundamental reason for disclosure" was that,

> Although plaintiffs do not intend to introduce expert testimony regarding damages due to emotional distress, defendant correctly points out that plaintiffs can establish their emotional distress claim through their own testimony. Defense counsel has a right to inquire into plaintiffs' pasts for the purpose of showing that their emotional distress was caused at least in part by events and circumstances that were not job related.

*Id.* at *2 (quoting *Lanning*, 1997 WL 597905 at *2).

The *Sidor* court continued,

> Moreover ... plaintiff may not in fairness select from the psychiatric testimony available and preclude defendant from learning the content of other records. In addition, it must be remembered that the issue presented here is not the same as whether a mental examination may be ordered pursuant to Rule 35 of the Federal Rules of Civil Procedure.

*Sidor*, 1998 WL 164823 at *2 (citing *Price v. County of San Diego*, 165 F.R.D. 614, 623 (S.D.Cal.1996)).

#### b. Cases Finding Waiver Only When the Privileged Communications Are Put in Issue by the Patient–Litigant

*Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225 (D.Mass.1997) is the leading post-*Jaffee* case holding that one does not waive the psychotherapist-patient privilege by placing one's mental or emotional condition at issue. The *Vanderbilt* court held that the psychotherapist-patient privilege is waived only where the patient either calls his or her therapist as a witness, or introduces in evidence the substance of any therapist-patient communication.

In *Vanderbilt*, the plaintiff alleged that she had made numerous requests that her pay and that of another female administrative assistant working for the Defendant City be raised to a level in line with a male administrative assistant who was hired at approximately the same time as the plaintiff. After her requests were denied, the plaintiff filed a lawsuit in which she claimed violations of state and federal discrimination and retaliation laws. She sought emotional distress damages in six of her eight claims. *See Id.* at 226.

The defendants filed a motion to compel the plaintiff to produce her "psychiatric and psychotherapeutic" records, to answer questions at a deposition concerning any psychiatric treatment, counseling or psychotherapy she might have had, and to permit the depositions of any mental health professionals who had provided such treatment to the plaintiff. The defendants maintained that by

---

**5.** The "in controversy" requirement of Rule 35(a) would, in this Court's view, allow greater latitude for discovery than the evidentiary privilege established in *Jaffee*. *See* discussion *infra* at p. 631–32.

seeking damages for emotional distress, the plaintiff had waived the psychotherapist-patient privilege. The court disagreed, and held that the privilege would not be waived unless the plaintiff used the privilege communications as evidence herself. *See Id.* at 228.

The *Vanderbilt* court began its analysis with a description of *Jaffee v. Redmond.* The court emphasized that in *Jaffee,* the Supreme Court had explicitly held that courts should not make decisions regarding the applicability of the psychotherapist-patient privilege by balancing the interests of the patient and the value of the evidence:

> "Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege ... [I]f the purpose of the privilege is to be served, the participants in the confidential conversation 'must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.'"

*Id.* at 227–28 (quoting *Jaffee,* 116 S.Ct. at 1932 (quoting in part *Upjohn,* 449 U.S. at 393, 101 S.Ct. 677)).

The *Vanderbilt* court also noted that the *Jaffee* court had recognized that the privilege could be waived, but had not specified under what circumstances waiver would occur. *See Id.* at 228. The court observed that there were a number of ways in which one could waive the privilege, such as through an explicit waiver, or by offering the "privileged material" as evidence. The court described the defendants' theory that the plaintiff had waived the privilege by claiming emotional distress damages, thereby placing her emo-

tional state at issue, as "more complicated." *See Id.*[6]

The *Vanderbilt* court correctly noted that since *Jaffee* was decided, a number of courts have held that a patient waives the psychotherapist-patient privilege "solely by placing her mental or emotional state at issue." *Id.* at 228 (citing *Vasconcellos v. Cybex International, Inc.,* 962 F.Supp. 701 (D.Md.1997), *Doolittle,* and *Sarko.* The *Vanderbilt* court observed that in each of these cases, the courts had "offered variations of the same reasoning, with *Sarko* going to the greatest depth." *Id.* The court noted that the *Sarko* court had offered three reasons for its holding: "1) that courts ruling before *Jaffee* had found waiver when a plaintiff put her emotional or mental state at issue; 2) that, by analogy to the attorney-client privilege, there is waiver in these circumstances; and 3) that it would be unfair to enforce the privilege in this situation." *Id.* The *Vanderbilt* court proceeded to analyze each of these reasons.

### Pre–Jaffee Decisions

With regard to the *Sarko* court's observation that in pre-*Jaffee* decisions, courts had held that there is a waiver of the psychotherapist-patient privilege when a party puts his emotional or mental state at issue, the *Vanderbilt* court noted that before *Jaffee,* courts were not bound by *Jaffee*'s mandate against balancing the need for the evidence against the patient's interest in privacy. The court declared that in its view, *Jaffee* had "drastically change[d] the waiver formula." *Id.* at 229. The *Vanderbilt* court asserted that when a party claims emotional injury, she has not explicitly waived the privilege; rather, "[a]ll she has done is make her communication with her psychotherapist potentially relevant." *Id.* (citing *Sax v. Sax,* 136 F.R.D. 541, 542 (D.Mass.1991) ("stating that '[t]he test is not whether the information which is

---

**6.** In a footnote, the *Vanderbilt* court said that it was assuming, "for the sake of argument only," that the plaintiff *had* placed her emotional condition at issue by seeking emotional distress damages, but that, in fact, it was unclear that she had actually done so. The court noted that in *Sabree v. United Brotherhood of Carpenters & Joiners of America, Local No. 33,* 126 F.R.D. 422, 426 (D.Mass.1989), the court had held that a plaintiff *does not* place his mental condition at issue by

making a "garden variety" claim of emotional distress. The *Vanderbilt* court said that because it held that, after *Jaffee,* a plaintiff does not waive the privilege simply by placing her emotional state at issue, it did not reach the questions whether it was necessary to do more than claim "garden variety" emotional distress to place one's emotional condition at issue, or whether the plaintiff in *Vanderbilt* had done so. *See Vanderbilt,* 174 F.R.D. at 228 n. 3.

the subject of the privilege is "relevant", the information is usually highly relevant.'")). The *Vanderbilt* court concluded,

> After *Jaffee*, a court cannot force disclosure of that evidence solely because it may be extremely useful to the finder of fact. Giving weight to the usefulness of the evidence as a factor in a decision regarding the scope of the privilege would be a balancing exercise that was barred by *Jaffee*.

*Vanderbilt*, 174 F.R.D. at 229.

The *Vanderbilt* court next pointed out that the *Sarko* court's "mental-state-at-issue" test did not provide the certainty required by *Jaffee*. The *Vanderbilt* court correctly observed that "different courts have come to very different conclusions as to when and under what circumstances a patient actually places her mental or emotional state at issue." *Id.* (comparing *Sabree*, 126 F.R.D. at 426) "(holding that plaintiff does not put mental state at issue by 'making a "garden variety" claim of emotional distress') with *Topol* ... 160 F.R.D. at 477 (holding that plaintiff places mental state at issue simply by 'seeking damages for mental and emotional' distress)," and went on to say that under the *Sarko* test, a patient would have no way of knowing, at the time of her psychotherapy, whether or not the psychotherapist-patient communications would be deemed privileged at a later date. The court observed, "This uncertainty could 'eviscerate the effectiveness of the privilege.'" *Vanderbilt*, 174 F.R.D. at 229 (quoting in part *Jaffee*, 116 S.Ct. at 1932).

### Analogy to Attorney–Client Privilege

The *Vanderbilt* court next analyzed *Sarko*'s analogy of the psychotherapist-patient privilege to the attorney-client privilege. The court said it agreed with the "process of analogy" in *Sarko*, noting that both privileges were "'"rooted in the imperative need for confidence and trust,"'" *Vanderbilt*, 174 F.R.D. at 229 (quoting *Jaffee*, 116 S.Ct. at 1928 (quoting *Trammel v. United States*, 445 U.S. 40, 51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980))), but that it disagreed with the result reached by the court in *Sarko*.

The *Vanderbilt* court first observed that the attorney-client privilege is waived when the communication is placed in issue by the client, i.e., when the client uses the substance of the communication to further her own cause, and when the client sues her attorney for malpractice. The court reasoned that, similarly, the psychotherapist-patient privilege would be waived if the communication, itself, was put in issue by the patient. The court stated, "A patient whose cause of action relies on the advice or findings of her psychotherapist cannot claim the privilege," and commented that if a patient were to sue the therapist for malpractice, the privilege would be waived. *Vanderbilt*, 174 F.R.D. at 229. The court stated that the act of seeking damages for emotional distress is analogous to seeking attorney's fees in that the fact that a privileged communication has taken place may be relevant, "[b]ut, the fact that a communication has taken place does not necessarily put its content at issue." *Id.*

### Fairness

With respect to the *Sarko* court's statement that "'allowing a plaintiff "to hide ... behind a claim of privilege when that condition is placed directly at issue in a case would simply be contrary to the most basic sense of fairness and justice,"'" *Id.* at 229–30 (quoting *Sarko*, 170 F.R.D. at 130 (quoting *Premack v. J.C.J. Ogar, Inc.*, 148 F.R.D. 140, 145 (E.D.Pa.1993))), the *Vanderbilt* court noted that this argument "harkens back" to the premise that a privilege "'cannot and should not at once be used as a shield and a sword.'" *Vanderbilt*, 174 F.R.D. at 230 (quoting in part, *Inserra v. Hamblett & Kerrigan, P.A.*, 1995 WL 54402 (D.N.H.1995)). The *Vanderbilt* court again agreed with the premise, but not with the manner in which it was applied by the court in *Sarko*. *Vanderbilt*, 174 F.R.D. at 230.

The *Vanderbilt* court pointed out that the plaintiff in *Vanderbilt* was not attempting to use the privileged communication as a sword, and stated that if she were to offer evidence concerning the substance of her conversations with her therapist to bolster her emotional distress claim, the court would agree that the privilege had been waived. *See Id.* The court concluded that as long as the plaintiff does not use the substance of her therapist-patient communications by, for ex-

ample, calling her therapist as a witness, or testifying to the substance of the communications herself, the communications would be privileged; the plaintiff would waive the privilege only by putting the communications, themselves, at issue. *See Id.* However, the *Vanderbilt* court held that facts pertaining to whether or not the plaintiff had in fact undergone psychotherapy, and the dates of treatment, did not fall within the ambit of the privilege, and were therefore subject to discovery.[7]

In *Johnson v. Trujillo*, 977 P.2d 152 (Colo. 1999), the Supreme Court of Colorado addressed one of the questions not addressed by the *Vanderbilt* court, i.e., whether one places one's mental or emotional condition at issue by claiming emotional distress damages, thereby waiving the psychotherapist-patient privilege. The *Johnson* court held that making a "generic" claim for emotional distress damages does not constitute a waiver of the privilege where the mental suffering alleged does not exceed what an ordinary person would likely experience in similar circumstances.

The plaintiff in *Johnson* was involved in a traffic accident in November of 1994 in which she was rear-ended by the defendant. The plaintiff claimed to have sustained physical injuries and sought compensation for those injuries, medical expenses, and damages for "mental anguish, emotional distress, pain and suffering, and loss of enjoyment of life." *Id.* at 157.[8] During her deposition, the plaintiff testified that she had separated from her husband and that they had filed for divorce in January of 1998. The divorce was finalized in July, 1998. The plaintiff and her husband had attended counseling sessions prior to the divorce. The plaintiff also testi-

fied that she was seeing a psychiatrist, who was treating her for depression.

The defendant filed a motion to compel production of various records, including those of plaintiff's treatment with her psychiatrist and records from her marriage counseling sessions, arguing that the plaintiff had waived the psychotherapist-patient privilege by claiming damages for mental anguish, emotional distress, pain and suffering and loss of enjoyment of life.[9] As in the present case, the defendant contended that it would be unfair to preclude the defendant from discovering other potential causes of the plaintiff's mental and emotional suffering that were unrelated to defendant's actions.

The *Johnson* court noted that some courts had held that "generic" claims for emotional distress put a party's mental condition at issue and therefore constituted a waiver of the privilege, while others had concluded that such claims did not provide a sufficient basis for finding an implied waiver. The court stated that the defendant's most compelling argument was that the information sought might be relevant to a determination of the extent to which the plaintiff's mental suffering was attributable to the accident as opposed to some other cause. However, the court rejected this argument as "unpersuasive," stating that it was in the nature of evidentiary privileges to "sacrifice some availability of evidence relevant [sic] to an administration of justice," and that such sacrifice was warranted by the social importance of the interests and relationships the privileges seek to protect. *Id.* at 157.

The *Johnson* court observed that the rationale for courts finding waiver of privileges arises from the conviction that it would be unfair to allow a party to use a privilege as

7. In an Order dated March 30, and in a subsequent clarifying Order dated April 22, 1999, this court required Plaintiff to respond in part to Defendant Moore's Interrogatory Number 4, which requested the names, addresses and telephone numbers of all health care providers who had provided any service to Plaintiff from 1988 to the present. The Orders required Plaintiff to respond, but limited the relevant time frame to the period from one year preceding Plaintiff's termination to the present.

8. While *Johnson* involved physical injuries and mental suffering "incident to" the physical injuries, *see Johnson*, 977 P.2d at 157–58, the reasoning of the court applies with equal force to Plaintiff Fritsch's situation.

9. Although the *Johnson* court applied Colorado statutory privileges, the analysis is the same as that for the federal privilege in that the *Johnson* court declined to apply a balancing test and stated that the only basis for allowing a disclosure would be an express or implied waiver. *See Id.* at 154–55.

both a "sword" and a "shield." However, the court stated that it did not appear that Johnson was "making an unseemly, offensive use of the privilege." Rather, she was a tort plaintiff who was asserting "generic" claims for emotional distress damages. The court concluded,

> As it happens, Johnson has sought counseling for some unrelated emotional issues at various times in her life. Johnson has not made any independent tort claims for either intentional or negligent infliction of emotional distress,....She did not seek counseling for any emotional issues related to the accident. She does not seek compensation for the expenses incurred in obtaining either psychiatric counseling or marriage counseling. And finally, she does not plan to call any expert witnesses to testify about her mental suffering. Under these circumstances, we hold that bare allegations of mental anguish, emotional distress, pain and suffering, and loss of enjoyment of life are insufficient to inject a plaintiff's mental condition into a case as the basis for a claim where the mental suffering alleged is incident to the plaintiff's physical injuries *and does not exceed the suffering and loss an ordinary person would likely experience in similar circumstances.*

*Id.* at 157 (emphasis added).

The *Johnson* court said that to hold otherwise would "degrade the privileges and undermine the public policy of preserving confidence that they were designed to implement." *Id.* at 158. The court observed that the Plaintiff's claims for emotional distress damages were "typical of tort plaintiffs in personal injury *and other cases*," and that it did not want to open a "Pandora's box" of inquiry into the mental condition of claimants by finding waiver of the psychotherapist-patient privilege whenever a plaintiff had sought counseling for "unrelated personal problems." *Id.*

The case of *United States v. Doyle,* 1 F.Supp.2d 1187 (D.Or.1998) also supports the result in *Vanderbilt.* In *Doyle,* the defendant pled guilty to a kidnaping and sexual assault in which the victim was violently abducted, beaten, and raped over a three day period. The victim was interviewed on a number of occasions by law enforcement personnel from various agencies. All of the law enforcement reports documenting her statements were provided to the defendant. The victim was given the opportunity to consult with licensed psychotherapists to help her cope with what had happened to her. The statements she made during her therapy sessions were not disclosed to the government, nor to the defendant. *See Id.* at 1188.

The defendant learned about the counseling sessions and subpoenaed the therapists' records. The reason given for subpoenaing these records was that the government planned to seek an upward adjustment pursuant to Sentencing Guideline § 5K2.3, (Extreme Psychological Injury), and intended to call the victim as a witness at the sentencing hearing. The government and the two therapists involved moved to quash the subpoenas.

The *Doyle* court noted that the Supreme Court had recently recognized the psychotherapist-patient privilege, and quoted at length the portion of the *Jaffee* opinion discussing the need for confidentiality in the psychotherapist-patient relationship. The court then addressed whether the victim had waived the privilege by making statements about the offenses committed against her, and whether she would waive the privilege by testifying at the sentencing hearing. The court stated,

> The relevance of an issue to a proceeding does not operate to waive privileges the law confers on protected conversations about that issue. *In the typical case, the privilege is waived by the privilege holder's volunteering statements or testimony about the content of the protected communication.* Thus, were [the victim] to volunteer testimony about the content of her counseling sessions with [her therapists], such would operate to waive the privilege with respect to such therapy.

*Id.* at 1190 (emphasis added). The court held that the privilege would not be deemed waived simply because the victim testifies about the offenses and their effect on her, "even though one may reasonably infer that she discussed these same matters with her psychotherapists." *Id.*

The *Doyle* court also disagreed with the defendant's contention that his Sixth Amendment right to compulsory process "trumps" the victim's right to confidentiality of the psychotherapy records, noting that *Jaffee* had made it clear that the balancing test advocated by the defendant was prohibited. The *Doyle* court concluded,

> Society, through its laws creating or recognizing privileges ... encourages marital partners to be intimate in their conversations, secure in the knowledge that no one can compel the spouse to reveal those conversations covered by the privilege; in the same vein, those in need of legal advice have every motive to be candid with their attorneys, confident that the exchange will not be used to their detriment; those in need of psychological assistance may reveal their most private thoughts to their psychotherapist knowing that their volunteered statements will not be shared with anyone else without their consent.

*Doyle*, 1 F.Supp.2d at 1191.[10]

### 3. *Analysis*

A close review of post-*Jaffee* cases addressing the circumstances under which a court will compel discovery of a party's psychotherapist-patient records reveals that in a number of the cases in which courts found waiver of the psychotherapist-patient privilege, the party claiming the privilege intended to call his or her psychotherapist as a witness, or otherwise put the substance of psychotherapist-patient communications directly at issue. *See, e.g., Sarko; Doolittle; Vann; EEOC;* and *Kirchner.* These courts reasoned that fairness required finding a waiver of the privilege under such circumstances. *See, e.g., EEOC,* 990 F.Supp. at 1142.

This court is of the view that the holdings in these cases are overbroad. The courts

were correct in stating that fairness required finding waiver in those cases. However, that is because in each case, the plaintiffs put their psychotherapist-patient communications directly at issue, either by stating that they intended to call their psychotherapists as witnesses, or by claiming to suffer from a mental illness. Under the *Vanderbilt* analysis, there would be *actual* waiver of the psychotherapist-patient privilege under these circumstances. In holding that one waives the privilege by placing one's mental or emotional condition "at issue," under the factual scenarios presented rather than simply finding actual waiver, these courts accorded insufficient weight to the evidentiary privilege.

In many of the other cases discussed above, the courts found waiver, relying either on the broad holdings of cases in which there was *actual* waiver, without further analysis, or relying on pre-*Jaffee* cases in which the prohibited balancing approach was used. *See, e.g., Sarko; Vann; Sidor;* and *Lanning.* In this Court's view, the courts in these cases failed to recognize that *Jaffee* "drastically change[d] the waiver formula." *Vanderbilt,* 174 F.R.D. at 229. Still other cases, such as *Gatewood v. Stone Container Corp.,* 170 F.R.D. 455 (S.D.Iowa 1996), upon which Defendants rely, fail to address the issue of privilege at all. The *Gatewood* court simply concluded that the defendant's request for all of the plaintiff's medical and psychiatric records was "relevant to the subject matter of the action," and ordered disclosure.

This Court agrees with both the analysis and the results in *Vanderbilt* and *Johnson.* In this Court's view, the cases which hold that one waives the psychotherapist-patient privilege where the court determines that he has put his mental or emotional condition "at issue," misconstrue and misapply both *Jaffee* and the law of privilege. *Vanderbilt* and the

---

**10.** The *Doyle* court declined the defendant's request that the court examine the contents of the victim's therapists' files, *in camera,* to determine whether there was anything in them that might be helpful to him, stating,

In a different setting, would it be proper for a court to conduct an in camera invasion of an attorney-client privilege to determine if the privileged communication was helpful to an accused? It's not uncommon, for example, for a co-defen-

dant in a criminal case to make a deal with the Government and testify against the remaining defendants. The co-defendant is himself represented by counsel. Can anyone imagine the court granting a motion by the defendants to examine the cooperating defendant's attorney in camera regarding the privileged statements made to him to determine if any could be helpful to the defense?
*Id.* at 1191.

other cases finding waiver of the privilege only where the party puts the privileged communications at issue are better reasoned, involve a clearer application, and are truer to the spirit and intent of the Supreme Court's opinions in both *Jaffee* and *Upjohn*.

In *Jaffee*, the court stressed the "imperative" need for confidentiality in the psychotherapist-patient relationship, and noted that, ". . . the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." *Jaffee*, 518 U.S. at 10, 116 S.Ct. 1923. The court also referred to the mental health of the country's citizenry as "a public good of transcendent importance." *Id.* at 11, 116 S.Ct. 1923. The court clearly intended that the privilege not be subject to the vagaries of individual decisions by trial courts, and made this apparent when it rejected the balancing approach, stating,

> Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege. As we explained in *Upjohn*, if the purpose of the privilege is to be served, the participants in the confidential conversation "must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."

*Jaffee*, 518 U.S. at 18, 116 S.Ct. 1923 (quoting in part *Upjohn*, 449 U.S. at 393, 101 S.Ct. 677).

*Sarko* and the other "mental state at issue" cases would result in exactly what the *Jaffee* court was trying to avoid, i.e., "widely varying applications" and consequent "evisceration" of the privilege. Under the "mental state at issue" test, whether a litigant's psychotherapist-patient records would be deemed privileged or not would depend on individual judges' determinations of what it means to have put one's mental state "at issue"—an area in which, as the case law illustrates, there is little agreement. *See,*

*e.g., Vanderbilt*, 174 F.R.D. at 229 (comparing *Sabree*, 126 F.R.D. at 426 (explaining that plaintiff does not put mental state at issue by making a "garden variety" claim of emotional distress); with *Topol*, 160 F.R.D. at 477 (stating that plaintiff places mental state at issue simply by seeking damages for emotional distress)). In addition, a person would have no way of knowing at the time he was undergoing psychotherapy whether, at some time in the future, he might be a litigant in a civil lawsuit with a claim for emotional distress damages, and thereby subject the substance of his psychotherapy sessions to discovery by his adversary.

Further, if, in an effort to achieve uniformity in application, the "mental-state-at-issue" courts were to adopt the standard that one places one's mental state at issue whenever one claims damages for emotional distress, this would go directly against the *Jaffee* court's clear intent that the privilege not be lightly deemed waived. In holding that there was a federal psychotherapist-patient privilege, the *Jaffee* court noted that, "the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment," and asserted that confidentiality was the *"sine qua non "* for successful psychiatric treatment. The court determined that protecting from involuntary disclosure confidential communications between a psychotherapist and her patient served "important private interests." To hold that merely claiming emotional distress damages in a civil lawsuit constitutes a waiver of the privilege would, in this Court's view, be contrary to the spirit and clear intent of *Jaffee*.

Although the *Jaffee* court did not specify under what circumstances the psychotherapist-patient privilege would be waived, it did address the issue of waiver. In stating that it would not attempt to delineate the full contours of the privilege in its opinion, the court stated, "[W]e do not doubt that there are *situations in which the privilege must give way*, for example, if a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist." *Jaffee*, 518 U.S. at 18 n. 19, 116 S.Ct. 1923. It is evident from this comment

that the privilege is not to be readily waived. The *Jaffee* court describes an extreme situation under which harm to the patient or others is likely to occur if the confidential communication is not revealed. Such a situation presents far more compelling circumstances than exist in the present case. Here, the defendants would like to be permitted to go on a "fishing expedition" to attempt to discover whether or not there might be some psychological trauma or other event in the plaintiff's past to which they can attribute some or all of her claimed emotional distress. The *Jaffee* court clearly did not intend that this important privilege be waived for such a purpose.

Most significantly, this court believes that it is manifest from the language of the *Jaffee* opinion itself that the court did not intend that placing one's mental or emotional condition in issue in litigation would constitute a waiver of the privilege. In discussing the reasons for and against a psychotherapist-patient privilege, the court stated,

> In contrast to the significant public and private interests supporting recognition of the privilege, the likely evidentiary benefit that would result from the denial of the privilege is modest. If the privilege were rejected, confidential conversations between psychotherapists and their patients would surely be chilled, *particularly when it is obvious that the circumstances that give rise to the need for treatment will probably result in litigation.*

*Id.* at 11–12, 116 S.Ct. 1923 (emphasis added). It is clear from this passage that the *Jaffee* court envisioned that the privilege would protect from disclosure confidential psychotherapist-patient communications *even if* the patient placed his mental or emotional condition at issue in litigation.

The conservative approach to waiver taken by the *Vanderbilt* court affords greater protection to the psychotherapist-patient relationship and is truer to both *Jaffee* and *Upjohn* in that it results in a more certain, predictable application of the privilege. Defendants' argument that it would be "unfair" not to require production of the records they seek because to do so might deprive them of important evidence that is relevant to the issue of emotional distress damages reflects a fundamental misunderstanding of the nature of the law of privilege. It is the very essence of evidentiary privileges to protect from disclosure relevant evidence. *See, e.g., United States v. Nixon,* 418 U.S. 683, 709, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Johnson,* 977 P.2d 152, 156–57. By creating an evidentiary privilege, society has made a judgment that fostering certain ideals or relationships is worth the potential sacrifice involved in terms of the loss of relevant evidence. As the *Vanderbilt* court observed, " 'The test is not whether the information which is the subject of the privilege is relevant, the information is usually highly relevant.' " *Vanderbilt,* 174 F.R.D. at 229 (quoting *Sax v. Sax,* 136 F.R.D. 541, 542 (D.Mass.1991)).

Defendants' argument that while the plaintiff may not have put her mental condition "in controversy" within the meaning of Rule 35(a) of the Federal Rules of Civil Procedure, she has put her condition "at issue" for purposes of waiver of the psychotherapist-patient privilege, is unpersuasive. That argument is based on two assumptions: that it is *more* intrusive to require a party to undergo a mental examination than it is to require production of records of his or her psychotherapy sessions, and that the "in controversy" requirement of Rule 35(a) sets a *higher* standard than does the evidentiary privilege protecting such records. See Transcript of March 24, 1999 motion hearing, at pp. 5–6.

Some courts have required production of a party's psychotherapy records while at the same time refusing to require the party to submit to a mental examination pursuant to Rule 35(a), on the ground that production of the records is less intrusive. *See, e.g., Bridges,* 850 F.Supp. 216; *Fox,* 179 F.R.D. at 307–08. Other courts have stated or implied that the standard for requiring production of a party's psychotherapy records is or should be lower than that for ordering a mental examination because of Rule 35(a)'s "in controversy" requirement, stating that the invasion of privacy involved in turning over one's psychological records is *less* burdensome than that involved in a mental examination. *See, e.g., Price,* 165 F.R.D. 614; *Sidor,* 1998

WL 164823; *Lanning*, 1997 WL 597905 at *2.

These assumptions are not, in this Court's view, valid. As the *Jaffee* court noted, effective psychotherapy requires an atmosphere in which the patient is willing to express his most personal thoughts and feelings; disclosure of confidential communications made during counseling sessions may cause "embarrassment or disgrace." *Jaffee*, 518 U.S. at 10, 116 S.Ct. 1923. Many, if not most, people would undoubtedly prefer to submit to a mental examination, in which they have a degree of control over what information is revealed, than to have the records of their past psychotherapy sessions disclosed to their adversaries in litigation.

The Supreme Court has held that before a person will be required to submit to a mental examination, the party making the request must make "an affirmative showing . . . that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Schlagenhauf v. Holder*, 379 U.S. 104, 117–18, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). This court believes that in establishing an evidentiary privilege for psychotherapist-patient records, the *Jaffee* court set a *higher* standard than Rule 35(a)'s "in controversy" requirement.

### 4. *Application to the Present Case*

Defendants maintain that they are entitled to all of Plaintiff's psychological records in order to counter Plaintiff's assertion that Defendant Kaheny "irrationally" regarded Plaintiff as suffering from a psychological disability. The Court finds that the information Defendants seek is not relevant to this issue. Defendant Kaheny's decision to require Plaintiff to undergo a psychiatric examination must be justified as objectively reasonable *based upon what Kaheny knew at the time he made the decision.* His decision cannot be justified by medical and/or psychological information pertaining to the Plaintiff which was learned by Defendants after the fact.

■ Defendants also claim that Plaintiff has waived the psychotherapist-patient privilege by claiming damages for emotional distress, thereby placing her mental or emotional condition "in issue" in this case. This Court finds, as in *Johnson*, that the Plaintiff has not placed her mental or emotional condition "at issue" in the present case by claiming to have suffered emotional distress as a result of Defendants' actions. In the context of a request to compel a psychological examination pursuant to Rule 35(a), this Court has previously held that a party does not place her mental condition "in controversy" within the meaning of the Rule merely by making a claim for emotional distress damages. *See Turner v. Imperial Stores*, 161 F.R.D. 89, 97 (S.D.Cal.1995). Because this Court believes that the evidentiary privilege established in *Jaffee* is stricter than Rule 35(a)'s "in controversy" requirement, the Court concludes that in the present case, which presents similar circumstances, the Plaintiff has not placed her mental or emotional condition "at issue," and thereby waived the psychotherapist-patient privilege.

In the present case, as in *Turner*, the plaintiff has not brought a claim for either intentional or negligent infliction of emotional distress; she does not allege that she suffered a psychiatric injury or disorder as a result of the defendants' conduct; she does not claim to suffer from unusually severe emotional distress; and she does not intend to offer expert testimony regarding her emotional distress. Rather, she merely claims damages for emotional distress which she says she suffered as a result of defendants' actions as alleged in the complaint. The mental suffering Plaintiff claims "does not exceed the suffering and loss an ordinary person would likely experience in similar circumstances," and constitutes "matters that are within the everyday experience of the average juror." *Johnson*, 977 P.2d 152, 157–58.

■ Even if the Plaintiff can be said to have placed her mental or emotional condition at issue by claiming damages for emotional distress, the Court finds that she has not waived the psychotherapist-patient privilege since she has not put the substance of communications between herself and her psychotherapist(s) at issue in this litigation.

"[T]he fact that a communication has taken place does not necessarily put its content at issue." *Vanderbilt*, 174 F.R.D. at 229. Unlike the plaintiffs in *Doolittle*, *Vann*, and *EEOC*, the Plaintiff in the present case does not intend to call her therapist as a witness or to make any other "offensive use" of the privilege. Under these circumstances, this Court declines to find waiver of the psychotherapist-patient privilege.

It is important to point out that in holding that the Plaintiff has not waived the psychotherapist-patient privilege, this Court is not precluding Defendants from "inquir[ing] into Plaintiff['s] past[ ] for the purpose of showing that [her] emotional distress was caused at least in part by events and circumstances that were not [related to the circumstances of her termination]." *Sidor*, 1998 WL 164823 at *2. The Court is merely precluding Defendants from prying into the substance of psychotherapist-patient communications for this purpose.

### C. *Medical Records*

■ There is no federal physician-patient privilege protecting medical records from discovery. *Pagano v. Oroville Hospital*, 145 F.R.D. 683, 689 (E.D.Cal.1993) (citing *Whalen v. Roe*, 429 U.S. 589, 602 n. 28, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977)). However, the Supreme Court has recognized a limited privacy interest in the confidentiality of one's medical records. *Soto v. City of Concord*, 162 F.R.D. 603, 618 (N.D.Cal.1995)(citing *Whalen*, 429 U.S. at 599–600, 97 S.Ct. 869); *see also Doe v. Attorney General of U.S.*, 941 F.2d 780, 795–96 (9th Cir.1991) (establishing that information regarding a person's HIV status would fall within the ambit of the privacy protection afforded medical information); *Caesar v. Mountanos*, 542 F.2d 1064, 1067 n. 9 (9th Cir.), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 804 (1977)(holding that the right to privacy encompasses doctor-patient and psychotherapist-patient relationship); *Pagano*, 145 F.R.D. at 695–98 (establishing that state constitutional right to privacy is consistent with federal constitution).

In *Pagano*, the court noted that California has adopted a constitutional right to privacy,

and has recognized that medical records and the details of one's medical history are protected under this provision. *Id.* at 697. The *Pagano* court observed that this privacy right protects against invasions of privacy by both private citizens as well as those by the state. *Pagano*, 145 F.R.D. at 697. The court stated,

"A person's medical profile is an area of privacy infinitely more intimate, more personal in quality and nature than many areas already judicially recognized and protected ... [and there is a] reasonable expectation that such personal matters will remain with the physician." ... On the other hand, "[t]he information that may be recorded in a doctor's files is broadranging. The chronology of ailments and treatment is potentially sensitive. Patients may disclose highly personal details of lifestyle and information concerning sources of stress and anxiety. These are matters of great sensitivity going to the core of concerns for the privacy of information about an individual ..."

*Id.* (quoting *Division of Medical Quality v. Gherardini*, 93 Cal.App.3d 669, 678–79, 156 Cal.Rptr. 55 (1979) (citations omitted)); *see also Wood v. Superior Court*, 166 Cal.App.3d 1138, 1147, 212 Cal.Rptr. 811 (1985). The court continued, " 'Fundamental to the privacy of medical information is the ability to control [its] circulation.' " *Division of Medical Quality*, 93 Cal.App.3d at 678, 156 Cal. Rptr. 55.

■ The *Pagano* court noted that early cases had required a showing of a compelling state interest before the right to privacy in one's medical records could be breached, but that later cases applied a reasonableness test or a balancing analysis of the competing interests. *See Id.* at 698 (citations omitted). The *Pagano* court held that to the extent the California constitutional right to privacy was absolute in its reliance on a compelling interest analysis, it was inconsistent with federal law. Noting that Rule 26(b) of the Federal Rules of Civil Procedure allows the court to limit discovery based upon the needs of the case, the importance of the issues, and undue burden, the court instead adopted a balanc-

ing test to determine the scope of protection to be afforded medical records.

Rule 26(c) confers upon the court broad authority to regulate or prevent discovery even where the information requested is within the scope of Rule 26(b). "When a discovery request 'approach[es] the outer bounds of relevance and the information requested may only marginally enhance the objectives of providing information to the parties or narrowing the issues, the court must then weigh that request with the hardship to the party from whom the discovery is sought.'" *Priest v. Rotary*, 98 F.R.D. 755 (N.D.Cal.1983) (quoting *Carlson Companies, Inc. v. Sperry & Hutchinson Co.*, 374 F.Supp. 1080, 1088 (D.Minn.1973)).

In the present case, Defendants have requested the names, addresses and telephone numbers of "each and every health care provider which has provided any service" to the Plaintiff, from 1988 to the present, and have subpoenaed virtually all of her medical records for the same time period. Defendants speculate that Plaintiff's medical records might contain information concerning possible sources of emotional distress in her life other than the events in this case, and maintain that they are entitled to these records for the same reasons they believe they are entitled to Plaintiff's psychological records.

The potential relevance of the information sought by the defendants is, in the Court's view, minimal. The plaintiff need only show that defendants' actions were a substantial cause of her emotional distress, not the exclusive cause, in order to obtain damages for emotional distress. If the Plaintiff's relevant condition was substantially caused by the Defendants' conduct, "... the use of other psychological or emotional distress that a plaintiff suffered at other times will have only limited worth for defendants." *Bottomly*, 163 F.R.D. at 620.

This Court finds that the Defendants' broad discovery requests for all of Plaintiff's medical records "approaches the outer bounds of relevance and the information requested may only marginally enhance the objectives of providing information to the parties or narrowing the issues." *Priest*, 98 F.R.D. at 761. The Court further finds that

any possible relevance of the requested information is clearly outweighed by the hardship to the plaintiff that would necessarily be incurred in providing her private medical records to her adversaries.

### D. *Information From Plaintiff's Employee Medical File*

■ As set forth above, after this case was filed, Plaintiff's former employer, Defendant City of Chula Vista, provided Defendant's counsel with the contents of Plaintiff's medical file maintained by the City. Defendant's counsel used these documents to learn the names of some of Plaintiff's health care providers, and then issued subpoenas to these providers. The Plaintiff maintains that the documents in her employee medical file are privileged under both state and federal law.

The California Confidentiality of Medical Information Act, California Civil Code § 56.20, provides:

(c) No employer may use, disclose, or knowingly permit its employees or agents to use or disclose medical information which the employer possesses pertaining to its employees without the patient having first signed an authorization under Section 56.11 or Section 56.21 permitting such use or disclosure, except as follows:

. . . .

(2) That part of the information which is relevant in a lawsuit, arbitration, grievance, or other claim or challenge to which the employer and employee are parties *and in which the patient has placed in issue his or her medical history, mental or physical condition, or treatment* may be used or disclosed in connection with that proceeding.

(emphasis added).

In an Order filed on June 2, 1999, this Court determined that under the Act the records in question could not be disclosed to, or used by, anyone, including Defendants' counsel, without the plaintiff's authorization unless it was determined that the Plaintiff had placed her medical or mental condition "in issue" in this case.

In the June 2 Order, this Court declined to issue an order as to whether or not the exception set forth in Section 56.20 applied because the Court had under submission in the instant motions the question whether the Plaintiff had placed her mental condition "in issue." At that time, the Court ordered that Defendants' counsel not disclose or otherwise use the information from the plaintiff's employee medical file until further order of the court.

The Court has now determined that the plaintiff has not placed her mental or emotional condition "at issue" by claiming emotional distress damages in this case for purposes of determining whether or not she has waived the psychotherapist-patient privilege. Similarly, the Court finds that the plaintiff has not placed her mental or physical condition "in issue" within the meaning of § 56.20(c)(2) of the California Confidentiality of Medical Information Act. Therefore, the Court finds that the unauthorized disclosure of the contents of the Plaintiff's employee medical file to Defendants' attorney was not permitted under the Act.

## V.

### *Order*

Based upon the record at the present time, the Court orders as follows:

### A. *Defendant Ann Moore's Interrogatory Number 4*

The information requested in Defendant Ann Moore's Interrogatory Number 4 is not privileged in that a response to this Interrogatory does not require Plaintiff to reveal the substance of privileged communications between herself and her psychotherapists. Responses pertaining to health care providers other than psychotherapists are not privileged. However, the Court has previously ruled that the Interrogatory is overbroad and in requesting information from 1988 to the present.

Plaintiff has previously been ordered to respond to this Interrogatory, with the time frame limited to the period from one year prior to Plaintiff's termination to the present.

The previous Orders dated March 30, 1999 and April 22, 1999, stand.

### B. *Subpoenas Directed to Plaintiff's Health care Providers*

### 1. *Plaintiff's Psychotherapists/"Psycho–Social Records"*

The subpoenas at issue require the production of information pertaining to the substance of psychotherapist-patient communications. This information is privileged. Plaintiff's motion for a protective order is granted and Defendants' motion to compel production is denied. Insofar as the subpoenas require the production of psychotherapist-patient communications, they are ordered quashed.

### 2. *Plaintiff's Medical Records*

The subpoenas are overbroad in their requests for medical records. Further, the Court finds that the Plaintiff's privacy interest in the medical records requested outweighs their potential relevance in the present case. Plaintiff's motion for a protective order is granted and Defendants' motion to compel is denied. Insofar as the subpoenas at issue require the production of medical records other than psychotherapist-patient records, they are ordered quashed.

The records already produced in response to the subpoenas at issue by Kaiser Foundation Hospital and Kaiser Permanente Medical Care Program, and all copies of such records, shall be turned over to Plaintiff's counsel *forthwith*. Neither these records nor any information obtained from them may be used by Defendants for any purpose in this litigation.

### C. *Defendant City of Chula Vista's Request for Production of Documents Number 5*

This request is overbroad both as to subject matter and as to the time period for which documents are requested.

More importantly, in responding to this Request, Plaintiff would be required to reveal information protected by the psychotherapist-patient privilege. Plaintiff's motion for a protective order is granted and Defendants' motion to compel production is denied.

**636**

### D. *Defendant City of Chula Vista's Request for Production of Documents Number 6*

This request is overbroad both as to subject matter and as to the time period for which documents are requested.

More importantly, in responding to this Request, Plaintiff would be required to reveal information protected by the psychotherapist-patient privilege. Plaintiff's motion for a protective order is granted and Defendants' motion to compel production is denied.

### E. *Plaintiff's Employee Medical File*[11]

The Court finds that the unauthorized disclosure of the contents of Plaintiff's employee medical file to Defendants' counsel is not permissible under California's Confidentiality of Medical Information Act, since the Plaintiff has not placed her mental condition "in issue" in this case within the meaning of Section 56.20 of the Act.

Defendant's counsel shall return the file and any and all copies of its contents to Defendant City of Chula Vista forthwith. Defendants shall not use information contained in this file for any purpose in this case.

Defendants are ordered not to further disclose the contents of Plaintiff's employee medical file for use in this case without Plaintiff's prior authorization.

**IT IS SO ORDERED.**

---

11. Defendants' Objections to Plaintiff's reply papers pertaining to the May 7, 1999 hearing regarding the disclosure of the contents of Plaintiff's employee medical file, filed May 4, 1999, are overruled.