In re John DOE, Appellant.

UNITED STATES of America, Plaintiff,

v.

Steven DIAMOND, Defendant–Appellee.

No. 702, Docket 91–1467.

United States Court of Appeals,
Second Circuit.

Argued Dec. 16, 1991.

Decided June 1, 1992.

Barry C. Scheck (Lawrence A. Vogelman, Ellen Yaroshefsky, New York City, of counsel), for appellant.

Joseph W. Ryan, Jr. (L. Kevin Sheridan, Joseph W. Ryan, Jr., P.C., Uniondale, N.Y., of counsel), for defendant-appellee.

Joel I. Klein (David Ledecky, Klein, Farr, Smith & Taranto, Washington, D.C., of counsel), for amicus curiae American Psychiatric Ass'n in support of appellant.

Before MESKILL, KEARSE and WINTER, Circuit Judges.

WINTER, Circuit Judge:

This is an appeal from Chief Judge Platt's order holding appellant John Doe in civil contempt pursuant to 28 U.S.C. § 1826 (1988), for refusing to answer questions regarding his psychiatric history. Appellant is scheduled to be a key government witness in the extortion trial of Steven Diamond. The issues on appeal are whether we should recognize a psychotherapist-patient privilege and whether that privilege shields appellant from the civil contempt order. We recognize the privilege but affirm on the ground that the need for evidence concerning appellant's history of mental illness outweighs his privacy interests.

## BACKGROUND

On July 19, 1990, Steven Diamond was indicted for attempted extortion in violation of 18 U.S.C. § 1951 (1988). The indictment charged that Diamond attempted to extort a substantial sum of money, said by appellant to be $50,000, as the price of his assistance in obtaining a zoning variance from a local zoning board for a vacant theater owned by appellant. Appellant initiated a federal investigation of Diamond by filing a complaint detailing this demand. Obviously, the government's case against Diamond will rest largely on appellant's testimony, and his credibility will be a central issue at trial.

On November 25, 1990, the government notified counsel for Diamond that it had discovered that appellant had "periodically suffered from depression, during the past 30 years" for which he had consulted psychiatrists. Chief Judge Platt requested that appellant consent to interviews of his

psychiatrists and to the release of his files. Counsel for appellant agreed to an *in camera* review by the court of appellant's psychiatric records to enable the court to determine whether and to what extent the files should be made available to the defense and to the government. After the *in camera* review, Chief Judge Platt determined that they were relevant and that he would direct appellant to answer questions regarding his psychiatric treatment, his statements to any doctors, and their statements to him. Chief Judge Platt also indicated that he would direct appellant to request that his doctors release his records to defense counsel. Stating that "there is no such thing as a patient privilege in the criminal law," Chief Judge Platt relied on the Sixth Amendment's Confrontation Clause as the basis for his ruling.

At a pretrial conference on January 15, 1991, appellant's counsel proposed that the psychiatric records be made available to defense counsel under a protective order for the limited purpose of allowing defense counsel to identify the information he would seek to use at trial. Chief Judge Platt issued the protective order, and appellant delivered the psychiatric records to defense counsel and the government.

At Chief Judge Platt's suggestion, defense counsel retained Dr. Daniel W. Schwartz, a psychiatrist, to examine the records for relevance to appellant's credibility. After reviewing the records, Dr. Schwartz submitted a report to Chief Judge Platt, stating, *inter alia:* "[Appellant's] long history of emotional illness is certainly relevant to his credibility as a witness and should be a subject permitted during cross-examination." Dr. Schwartz cited the diagnosis of Dr. Frank Sorenson, appellant's psychiatrist at the time of the alleged extortion, that appellant was "paranoid" and suffered from "narcissistic trends." Dr. Schwartz also noted that appellant's "interpretation of reality may well be affected, especially during the course of psychiatric treatment." Diamond's counsel took the position that all the files were potentially relevant.

Responding to Dr. Schwartz's report, counsel for appellant wrote in a letter to Chief Judge Platt that "it would be unfair, confusing, and prejudicial to permit defense counsel to go into the content of these confidential records." He also argued that "defense counsel has yet to point to one concrete fact revealed in these records that demonstrates that [appellant] cannot understand or relate the truth." Appellant's counsel took the position that the files were protected from disclosure by a psychotherapist-patient privilege.

With counsel for appellant and Diamond taking polar opposite positions, Chief Judge Platt scheduled a pretrial hearing for June 28, 1991 to resolve the privilege issue. In doing so, he stated that he was reserving particularized rulings as to the admissibility of specific aspects of appellant's history of mental illness until trial. At the hearing, appellant invoked the psychotherapist-patient privilege on the advice of counsel and refused to answer defense counsel's questions. These questions related to dates of psychiatric treatment, identification of the physicians, and his refusal to permit interviews of the doctors. He then revoked his previous consent to the *in camera* examination of his files. Chief Judge Platt held him in contempt of court on eleven counts. The district court stayed the execution of the contempt order to allow appellant to bring this appeal.

## DISCUSSION

Appellant asks us to reverse the contempt order on the ground that the information sought is protected by a psychotherapist-patient privilege. Issues regarding privilege are to be "governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." Fed.R.Evid. 501. The Supreme Court has stated that Rule 501 "manifested an affirmative intention not to freeze the law of privilege" and that "[i]ts purpose rather was to 'provide the courts with the flexibility to develop rules of privilege on a case-by-case basis.'" *Trammel v. United*

*States,* 445 U.S. 40, 47, 100 S.Ct. 906, 911, 63 L.Ed.2d 186 (1980) (citations omitted).

We have never decided whether a psychotherapist-patient privilege exists. *See United States v. Friedman,* 854 F.2d 535, 571 (2d Cir.1988), *cert. denied,* 490 U.S. 1004, 109 S.Ct. 1637, 104 L.Ed.2d 153 (1989); *In re Doe,* 711 F.2d 1187, 1193–94 (2d Cir.1983). One circuit and some district courts in this circuit, however, have explicitly recognized such a privilege in both civil and criminal cases. *See In re Zuniga,* 714 F.2d 632, 639 (6th Cir.), *cert. denied,* 464 U.S. 983, 104 S.Ct. 426, 78 L.Ed.2d 361 (1983); *Lora v. Bd. of Ed. of City of New York,* 74 F.R.D. 565, 575 (E.D.N.Y.1977) (recognizing applicable state psychiatrist-patient communication where there is "no substantial cost to federal substantive and procedural policy") (citation omitted); *United States v. Friedman,* 636 F.Supp. 462, 463 (S.D.N.Y.1986); *Calloway v. Marvel Entertainment Group,* 110 F.R.D. 45 (S.D.N.Y.1986). Additionally, forty-nine states have adopted some form of the psychotherapist-patient privilege. *See* Note, *Developments in the Law: IV. Medical and Counseling Privileges,* 98 Harv. L.Rev. 1530 (1985) [hereinafter *Developments* ] (forty-five states recognize psychotherapist-patient privilege as of 1985); *see also* Alaska Stat. · § 08.86.200(a) (1991) (recognizing psychologist-patient privilege); Iowa Code § 622.10 (1991) (mental health professional privilege); Neb.Rev.Stat. § 27–504 (1990) (physician-patient privilege embracing treatment of mental and emotional conditions); W.Va.Code § 30–31–13 (1991) (licensed professional counselor's privilege).

Federal courts have been less receptive, and the psychotherapist-patient privilege has been rejected by three circuits. *See In re Grand Jury Proceedings,* 867 F.2d· 562 (9th Cir.), *cert. denied,* 493 U.S. 906, 110 S.Ct. 265, 107 L.Ed.2d 214 (1989) (no psychotherapist-patient privilege); *United States v. Corona,* 849 F.2d 562, 567 (11th Cir.1988), *cert. denied,* 489 U.S. 1084, 109 S.Ct. 1542, 103 L.Ed.2d 846 (1989) (no psychotherapist-patient privilege in federal criminal trials); *United States v. Lindstrom,* 698 F.2d 1154 (11th Cir.1983)

(same); *United States v. Meagher,* 531 F.2d 752 (5th Cir.), *cert. denied,* 429 U.S. 853, 97 S.Ct. 146, 50 L.Ed.2d 128 (1976) (same). The cases rejecting the privilege are not helpful, however, because they are founded on the view that Rule 501 limits the development of privileges to those recognized by the common law, a position that we regard as contrary to the teaching of *Trammel* "not to freeze the law of privilege." 445 U.S. at 47, 100 S.Ct. at 911.

Rule 501 tells us to look to "reason and experience." So far as reason is concerned, it can hardly be disputed that communications between a patient and a psychotherapist typically involve far more intensely personal information than communications to other kinds of doctors, a fact that accounts for the somewhat wider recognition of a privilege in the case of psychotherapists than in the case of physicians generally. *See Developments,* 98 Harv. L.Rev. at 1539. The diagnosis of a psychotherapist may also involve matters that a patient regards as highly personal. Disclosure of communications to psychotherapists and their diagnoses would frequently be embarrassing to the point of mortification for the patient. Nor can it be seriously disputed that unrestrained disclosure might discourage persons from seeking psychiatric help. Reason thus supports recognition of some form of privilege. So far as experience is concerned, every state save one recognizes such a privilege either by judicial decision or statute. The widespread adoption of the privilege strongly suggests that experience with it has been favorable.

Given the importance of the interests at stake, personal privacy and the need for informed medical assistance, and the widespread recognition of the privilege adopted in forty-nine states, we recognize the existence of a psychotherapist-patient privilege under Rule 501. However, we also recognize, as appellant concedes, that the privilege is highly qualified and requires a case-by-case assessment of whether the evidentiary need for the psychiatric history of a witness outweighs the privacy interests of that witness. *See In re Zuni-*

*ga,* 714 F.2d at 639. Indeed, the privilege amounts only to a requirement that a court give consideration to a witness's privacy interests as an important factor to be weighed in the balance in considering the admissibility of psychiatric histories or diagnoses.

■ Although appellant's psychiatric files do contain material that squarely implicates his privacy interests, the balance in this case weighs overwhelmingly in favor of allowing an inquiry into his history of mental illness. Appellant is not only the person who initiated the criminal investigation against Diamond but also a witness whose credibility will be the central issue at trial. He has a long history of emotional illness, and there is expert psychiatric opinion in the record that this history is relevant to his credibility. That opinion includes the observation that appellant's "interpretation of reality" might have been affected during times in which he was undergoing psychiatric treatment, as he was at the time of the events about which he is to testify. We agree with Chief Judge Platt that a preclusion of any inquiry into appellant's psychiatric history would violate the Confrontation Clause and vitiate any resulting conviction of Diamond.

Appellant poses for us various hypotheticals concerning the disclosure of communications made to psychotherapists thirty years ago, destruction of the privacy interests of a third party, and the violation of the professional obligations of the psychotherapists involved. These matters are not before us, however. The questions that appellant declined to answer concerned times at which he received psychiatric treatment and the names of particular psychotherapists. They also concerned his refusal to consent to those psychotherapists being interviewed by counsel under the protective order. The hearing held by Chief Judge Platt was *in camera,* and appellant's answers to the questions and counsel's interviews of appellant's psychotherapists would have been subject to a protective order sufficient to prevent public revelation of confidential matters. His answers to the questions and consenting to the interviews would not, therefore, have resulted in the public disclosure of confidential matters.

This resolves the only issue before us, namely, whether appellant's history of emotional illness may be inquired into in *in camera* proceedings and subject to a protective order forbidding disclosure. Chief Judge Platt made it amply clear that the use of particular portions of appellant's psychiatric history would be ruled upon only at trial. Although we disagree with him as to the existence of a psychotherapist-patient privilege, we fully agree that in the present circumstances, the discovery concerning appellant's history of mental illness and treatment may go on *in camera* subject to the protective order and that rulings as to the admissibility of particular items of evidence must await trial. At that time, appellant's privacy interests, the need to explore particular aspects of the relation between his credibility and his history of emotional illness, and the traditional considerations of time and possible jury confusion can be weighed in a concrete setting that allows an informed decision.

We add a final word about appellant's claim that interviews of his psychotherapists might violate their professional obligations. Because the district court acted within its powers in ordering appellant to consent to these interviews, the obligations at stake, if any, are to third parties. No concrete issue regarding a third party is before us at this time, and we decline to speculate as to the appropriate methods of addressing such a problem, should it arise.

We therefore affirm.