UNITED STATES of America, Plaintiff,

v.

Stephen Richard DOYLE, Defendant.

Crim.No. CR 97–60085.

United States District Court,
D. Oregon.

April 17, 1998.

Craig E. Weinerman, Asst. Federal Defender, Eugene, OR, for Stephen Richard Doyle.

Frank R. Papagni, U.S. Attorney's Office, Eugene, OR, for U.S.

## ORDER

COFFIN, United States Magistrate Judge.

The United States has moved to quash two subpoenas issued by the defendant to Wendy Maltz and Marjorie Takei, requiring them to produce "all medical and psychological records in your possession regarding Teresa Garcia."

Ms. Garcia is the victim of kidnaping and assault crimes committed by defendant Stephen Doyle, who is scheduled to be sentenced on April 21, 1998. The Government, in its motion, succinctly describes the context of these subpoenas:

> Defendant has pled guilty to kidnaping and assaulting Teresa Garcia, a U.S. Forest Service employee. Ms. Garcia was violently abducted by Defendant who beat her, choked her into unconsciousness, threatened her with a revolver, bound her by handcuffs then chains, blindfolded her with duct tape, required her to remain naked or partially clothed, threatened her with death and anal sex, repeatedly raped her, and repeatedly forced her to provide him oral sex over a three day period. On the fourth day, defendant had Ms. Garcia shower and completely clean herself. He had Ms. Garcia put on her U.S. Forest Service uniform, then released her. Ms. Garcia did not know if Defendant intended to shoot her as she was being released.

> After being released, Ms. Garcia submitted to a comprehensive medical examination for treatment of her physical injuries caused by the handcuffs, chains, and the abduction struggle, and to having her genital areas examined. She had a dental examination because her teeth were loosened during her abduction and she had twice bitten the Defendant. She had an eye examination due to the injury her eye sustained from being choked into unconsciousness. Her medical, dental, and eye examination records have been disclosed to Defendant.

> Ms. Garcia repeatedly described her ordeal to law enforcement persons from the Oregon State Police, United States Forest Service, and Federal Bureau of Investigation, as well as to this Assistant United States Attorney regarding her victimization. All law enforcement reports documenting Ms. Garcia's statements have been provided to Defendant.

> In an effort to help her cope with what Defendant had done to her, the Government provided Ms. Garcia with an opportunity to consult with licensed social workers and has paid for such consultations. Ms. Garcia's statements made to these social workers during consultations have never been disclosed to the Government.

Dr. Takei is a licensed psychologist. Ms. Maltz is a licensed clinical social worker. Ms. Garcia participated in counseling sessions with each of them in an effort to cope with the psychological trauma suffered as a result of the defendant's actions.

Defendant seeks records of these counseling sessions because the Government is seeking a three-level upward adjustment pursuant to Sentencing Guideline § 5K2.3 (Extreme Psychological Injury), and intends to call Ms. Garcia to testify at the sentencing hearing in support of this adjustment.

Defendant contends that the injection of the Extreme Psychological Injury issue into the proceedings operates as a waiver of Ms. Garcia's psychotherapist privilege, notwithstanding that she has expressly asserted the privilege in these proceedings.

Acting on Ms. Garcia's behalf, Dr. Takei and Ms. Maltz have joined in the Government's motion to quash.

The psychotherapist privilege was recently recognized by the Supreme Court in *Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). There the Court observed:

> Like the spousal and attorney-client privileges, the psychotherapist-patient privilege is "rooted in the imperative need for confidence and trust." *Trammel[v. U.S.],* 445 U.S., at 51, 100 S.Ct., at 913, [63 L.Ed.2d 186 (1980)]. Treatment by a physician for physical ailments can often proceed successfully on the basis of a physical examination, objective information supplied by the patient, and the results of diagnostic tests. Effective psychotherapy, by contrast, depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment. As the Judicial Conference Advisory Committee observed in 1972 when it recommended that Congress recognize a psychotherapist privilege as part of the Proposed Federal Rules of Evidence, a psychiatrist's ability to help her patients 'is completely dependent upon [the patients'] willingness and ability to talk freely. This makes it difficult if not impossible for [a psychiatrist] to function without being able to assure ... patients of confidentiality and, indeed, privileged communication. Where there may be exceptions to this general rule ..., there is wide agreement that confidentiality is a sine qua non for successful psychiatric treatment.' Advisory Committee's Notes to Proposed Rules, 56 F.R.D. 183, 242 (1972) (quoting Group for Advancement of Psychiatry, Report No. 45, Confidentiality and Privileged Communication in the Practice of Psychiatry 92 (June 1960)). By protecting confidential communications between a psychotherapist and her patient from involuntary disclosure, the proposed privilege thus serves important private interests.

*Id.* 116 S.Ct. at 1928–29

■ In view of the guidance provided by *Jaffee* on the issue, I reject the defendant's claim that the Government, by seeking an upward departure based upon the victim's psychological injury, has waived the victim's privilege. The privilege, of course, is not the Government's to waive—it belongs to Ms. Garcia—and it is she and she alone who may elect to waive it. She expressly asserts it.

■ The inquiry must next focus on whether Ms. Garcia has waived the privilege through statements she has previously given about the offenses committed against her, or may make during her testimony at the sentencing hearing.

In this analysis, I am guided by examples of waivers of analogous privileges, such as the attorney-client and spousal privileges cited in the *Jaffee* ruling. Suppose a victim in Ms. Garcia's shoes had described her ordeal to her spouse. She does not surrender the intimate privacy of their conversations simply by giving a statement to the police or testifying at trial about the same subject matter. Nor would a victim waive the privileged content of her conversation with her attorney, if she had retained one to represent her interests in a case, merely by relating the details of the offenses to investigators on other occasions—notwithstanding that she

may have discussed these same details with her attorney.

Defendant's focus on how a waiver comes about is misplaced. The relevance of an issue to a proceeding does not operate to waive privileges the law confers on protected conversations about that issue. In the typical case, the privilege is waived by the privilege-holder's volunteering statements or testimony about the content of the protected communication.[1] Thus, were Ms. Garcia to volunteer testimony about the content of her counseling sessions with Dr. Takei, such would operate to waive the privilege with respect to such therapy.

In the absence of such testimony from Ms. Garcia, there is no loss of the confidentiality of the conversations simply because Ms. Garcia testifies regarding the offenses perpetrated against her and the effects those events have had on her, even though one may reasonably infer that she discussed these same matters with her psychotherapists.

■ Defendant also contends that his Sixth Amendment right to compulsory process trumps Ms. Garcia's right to confidentiality where the Government seeks an upward departure on grounds that the psychotherapists' records could perhaps dispel, citing *Davis v. Alaska* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

I disagree. If a victim's attorney or spouse had similarly privileged conversations with her that similarly might help a defendant's cause if revealed, the confidentiality of those communications does not surrender to the defendant's Sixth Amendment rights. If such were the law, what privilege could survive a defendant's assertion of evidentiary need? Lawyers, spouses, even priests, presumably, could be ordered to cough up their notes or memories about the most private and confidential communications in the face of a subpoena from a defendant in a criminal case. The *Jaffee* Court makes it clear that the balancing test advocated by the defendant is not appropriate:

Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege. As we explained in *Upjohn[Co. v. U.S.]*, if the purpose of the privilege is to be served, the participants in the confidential conversation 'must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.' 449 U.S. at 393, 101 S.Ct. at 684[66 L.Ed.2d 584 (1981)].

116 S.Ct. at 1932.

Furthermore, *Davis* does not have the force defendant advocates. In the case of *Camitsch v. Risley*, 705 F.2d 351 (9th Cir. 1983), the court held that a criminal defendant's confrontation rights do not overcome an assertion of confidentiality of juvenile court material when the defendant seeks pretrial discovery of juvenile court files. As the court explained:

In *Davis v. Alaska* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the Supreme Court held that Alaska's interest in the confidentiality of a juvenile's record of delinquency must yield to a criminal defendant's right to effective cross-examination where 'serious damage to the State's case would have been a real possibility' had defense counsel been permitted to introduce the prior delinquency adjudication of the witness and his 'vulnerable' status as a probationer as evidence of his pro-prosecution bias. 415 U.S. at 319, 94 S.Ct. at 1111. Camitsch attempts to expand the right of a criminal defendant under certain circumstances to introduce a juvenile offender's 'record' (i.e., the fact of a delinquency adjudication and probationary status) into a general right to rummage through the otherwise confidential case

---

1. There are other ways, of course, by which the privilege may be inapplicable or waived. A disgruntled former client, for example, who alleges malpractice by her attorney is deemed to waive the attorney-client privilege so that the lawyer may defend the action. A client who seeks advice from an attorney in order to commit a criminal act enjoys no protection from disclosure of the conversation. These situations, however, are inapposite to the waiver issue herein.

files of every juvenile witness. *Davis* will not stretch that far.

*Camitsch,* 705 F.2d at 353

The Court continued:

The right which *Davis* extended to encompass juvenile witnesses is the right to impeach a witness by showing that he has a 'record' in the precise, and not the loose, sense of the word—that is, the right to let the jury know that this witness is still facing pending criminal charges, has a prior conviction, or is still on probation.... *Davis* was necessary because many states sealed the records of juveniles, so that it was not possible for the jury to find out that the juvenile witness was, for example, on probation at the time he agreed to testify for the prosecution.

If anything, privileged communications invoke greater privacy interests than juvenile court proceedings, which are conducted before a judge, and typically involve participation by a prosecutor, counsel for the juvenile, police officer(s) and other witnesses, court clerks, bailiffs, and a caseworker. A record is made, but sealed to allow the youthful offender an opportunity to reform without the baggage of public stigma. The record may thereafter be disclosed by court order for a variety of reasons, and much information associated with such proceedings is not exempt from disclosure at all. *See, e.g.* ORS 419A.255

Confidential communications admit of much narrower exceptions to privacy, and the reasons giving rise to protection are much different. Society, through its laws creating or recognizing privileges, for example, encourages marital partners to be intimate in their conversations, secure in the knowledge that no one can compel the spouse to reveal those conversations covered by the privilege; in the same vein, those in need of legal advice have every motive to be candid with their attorneys, confident that the exchange will not be used to their detriment; those in need of psychological assistance may reveal their most private thoughts to their psychotherapist knowing that their volunteered statements will not be shared with anyone else without their consent.

If, as in *Camitsch,* a defendant is not entitled "to rummage through the otherwise confidential case files of every juvenile witness" to see if something therein might help him, even less is the defendant herein able to invade the privacy of Ms. Garcia by examining the confidential and privileged files of her psychotherapists.

Finally, although the defendant has requested the court to examine the contents of these files *in camera* in order to determine if there is anything therein that could possibly be a mitigating factor with respect to the upward departure issue, I decline to undertake such an examination. The court's review of the files would itself be a breach of the privilege.

In a different setting, would it be proper for a court to conduct an *in camera* invasion of an attorney-client privilege to determine if the privileged communication was helpful to an accused? It's not uncommon, for example, for a co-defendant in a criminal case to make a deal with the Government and testify against the remaining defendants. The co-defendant is himself represented by counsel. Can anyone imagine the court granting a motion by the defendants to examine the cooperating defendant's attorney *in camera* regarding the privileged statements made to him to determine if any could be helpful to the defense?

The files subject to the subpoenas are privileged; there has been no waiver of the privilege. The motion to quash is granted.