**UNITED STATES of America, Plaintiff,**

v.

**Howard ALPERIN, Defendant.**

**No. CR 00–0401 BZ.**

United States District Court, N.D. California.

Jan. 11, 2001.

---

Candace Kelly, Office of the U.S. Attorney, Criminal Division, San Francisco, CA, for Plaintiff.

Shawn Halbert, Office of the Federal Public Defender, San Francisco, CA, for Defendant.

### ORDER DENYING GOVERNMENT'S MOTION TO QUASH SUBPOENA FOR PRODUCTION OF MEDICAL FILES OF JUDITH C. PENNEY

ZIMMERMAN, United States Magistrate Judge.

Defendant Howard Alperin is charged with assaulting a United States Customs Inspector performing official duties, in violation of 18 U.S.C. § 111(a)(1). The Inspector alleges that defendant shoved her without provocation; defendant claims that the Inspector first forcibly grabbed his shoulder and that he then pushed the taller and heavier woman away in self-defense.

As part of its initial disclosure, the United States provided defendant with a letter from Psychiatrist Lennart Moller, M.D., stating that Dr. Moller has treated the Inspector for depression since September 1, 1999, and that since the incident of January 14(sic), 2000, she has suffered "a marked worsening in her depression." Defendant then subpoenaed the Inspector's psychiatric records. The Inspector asserted her psychotherapist-patient privilege not to disclose those records. The government now moves to quash the subpoena.

The United States argues that the subpoena should be quashed because the Inspector's psychiatric records are protected as confidential communications between a patient and her psychiatrist, citing *Jaffee*

*v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). The United States argues in the alternative that I must conduct an in camera review of the records to determine their relevance and balance potential prejudice against any possible probative value before I can compel the production of any records to defendant.

Defendant argues that he is entitled to review the Inspector's psychiatric records because they potentially (1) support his claim of self-defense and (2) cast doubt on the veracity and accuracy of the Inspector's testimony.

The federal common law psychotherapist-patient privilege was recently recognized by the Supreme Court in *Jaffee*. *Id.* at 15, 116 S.Ct. 1923. In that case, brought under 42 U.S.C. § 1983 and the Illinois wrongful-death statute, plaintiffs sought disclosure of a social worker's records of counseling sessions with the defendant police officer. *Id.* at 5, 116 S.Ct. 1923. The Supreme Court based its decision to recognize the new privilege on Federal Rule of Evidence 501, which "authorizes federal courts to define new privileges by interpreting 'common law principles ... in the light of reason and experience.'" *Id.* at 8, 116 S.Ct. 1923. The Court noted that all 50 states and the District of Columbia recognized some form of the privilege, and explained that the new privilege, like the spousal and attorney-client privileges, is "rooted in the imperative need for confidence and trust." *Id.* at 10, 116 S.Ct. 1923.

The Supreme Court refrained from defining the contours of the privilege, stating that "because this is the first case in which we have recognized a psychotherapist privilege, it is neither necessary nor feasible to delineate its full contours in a way that would 'govern all conceivable future questions in this area.'" *Id.* at 18, 116 S.Ct. 1923, quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The Court specifically instructed courts not to conduct a balancing test in deciding whether to apply the

privilege. *Id.* at 17, 116 S.Ct. 1923. However, the Court did anticipate situations in which disclosure of psychotherapist-patient communications might be compelled, such as when disclosure would prevent harm to the patient or to others. *Id.* at 18, n. 18.

*Jaffee* does not discuss how the privilege is to be applied when a criminal defendant's constitutional rights are implicated. At least one noted commentator has concluded that an exception to *Jaffee* will be established when necessary to vindicate a defendant's constitutional rights to a fair trial. 3 *Weinstein's Federal Evidence,* § 504.07[9], 504–24 (2nd ed.2000).

No circuit court has addressed this issue following *Jaffee.* Ninth Circuit law pre-*Jaffee* is no help since the Ninth Circuit was one of the circuits which did not recognize the psychotherapist-patient privilege in a criminal context. *see, e.g., In re Grand Jury Proceedings,* 867 F.2d 562, 564 (9th Cir.1989), *cert. denied* 493 U.S. 906, 110 S.Ct. 265, 107 L.Ed.2d 214 (1989).

In deciding what to do in this vacuum, I begin by looking at California law. The Supreme Court adopted the psychotherapist-patient privilege largely because all fifty states had concluded that there was a need to protect such communications, although the degree of protection varied from state to state. Although the Supreme Court rejected the notion of a balancing test in the civil context, there are strong reasons to question whether the same result would obtain in a criminal case such as this for at least two reasons.

First, the psychotherapist-patient privilege in California has never been absolute.[1] In *Tarasoff,* the California Supreme Court held that a psychotherapist who had reasonable cause to believe that a patient would likely commit a violent assault had a duty to disclose that information to the potential victim.[2] *Tarasoff v. Regents of the University of California,* 17 Cal.3d 425, 442, 131 Cal.Rptr. 14, 551 P.2d 334 (1976). The United States Supreme Court seems to have had *Tarasoff* in mind when it left open the possibility of exceptions to its rule. *Jaffee v. Redmond,* 518 U.S. at 18, n. 18, 116 S.Ct. 1923.[3] The public policy reasons favoring a breach of the psychotherapist-patient privilege when it will prevent harm to a person or property thus would seem to be equally compelling when a breach would prevent imprisonment of an innocent person.

More importantly, under California law, California courts are expected to balance a criminal defendant's Sixth Amendment rights to a fair trial and to confront witnesses against the patient's interest in maintaining confidentiality. *People v. Hammon,* 15 Cal.4th 1117, 1119, 65 Cal. Rptr.2d 1, 938 P.2d 986 (1997). The privilege does not apply "in any criminal proceeding in which the privilege would infringe on the defendant's constitutional rights of due process and confrontation of witnesses." 2 *Jefferson's California Evidence Benchbook* § 38.9, 818 (3d ed.1999), (citing *People v. Reber,* 177 Cal.App.3d 523, 531, 223 Cal.Rptr. 139 (1986), overruled on other grounds in *People v. Hammon,* 15 Cal.4th at 1123, 65 Cal.Rptr.2d 1, 938 P.2d 986.) In restricting a defendant's rights to pre-trial discovery of a victim's psychotherapeutic records, *Hammon* held that *Reber* incorrectly "assumed that a

---

1. The privilege is codified at Cal. Evid.Code § 1014.

2. Cal. Evid.Code § 1024 specifies that:

   there is no privilege under this article if the psychotherapist has reasonable cause to believe that the patient is in such mental or emotional condition as to be dangerous to himself or to the person or property of another and that disclosure of the communication is necessary to prevent the threatened danger.

3. The Tenth Circuit has recognized that a post-*Jaffee* exception to the psychotherapist-patient privilege exists where a serious threat could only be averted by disclosure of the otherwise-privileged communication. *United States v. Glass,* 133 F.3d 1356, 1359–1360 (10th Cir.1998). The Sixth Circuit recently refused to recognize that exception, but noted that under California law a psychotherapist could be compelled to testify against their patient in such circumstances. *United States v. Hayes,* 227 F.3d 578, 585–586 (6th Cir. 2000).

defendant might obtain before trial any information he would be able under *Davis* [*v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)] to obtain at trial." *People v. Hammon*, 15 Cal.4th at 1124, 65 Cal.Rptr.2d 1, 938 P.2d 986. Justice Mosk's concurrence notes the impracticability of deferring the subpoena of psychiatric records until trial. *Id.* at 1130, 65 Cal.Rptr.2d 1, 938 P.2d 986.[4]

Since an important reason for the Supreme Court's rejection of the balancing test approach in *Jaffee* was concern that patients would not confide in psychotherapists if they thought the information might be disclosed, that reason does not apply in California where the patient would expect from the outset that certain kinds of communications, such as those at issue here, are subject to disclosure under appropriate circumstances.

This approach is consistent with the approach favored by those circuits which had adopted the psychotherapist-patient privilege prior to *Jaffee*. *See, e.g., In re Doe,* 964 F.2d 1325, 1328–29 (2nd Cir.1992) (recognizing privilege but holding that mental health records of key government witness and chief accuser of defendant should be disclosed where witness had history of mental illness which could bear on his credibility)[5]; *In re Zuniga,* 714 F.2d 632, 639 (6th Cir.1983), *cert. denied,* 464 U.S. 983, 104 S.Ct. 426, 78 L.Ed.2d 361 (1983) (recognizing privilege, weighing scope of request against privacy interests of patients and allowing psychiatric records of patients' names and dates of treatment to be disclosed in billing fraud case).

This approach is also consistent with that taken by two of the three District Courts which have considered *Jaffee* in the criminal context where defendants sought psychological records to establish an element of their defense, or to impeach a witness's credibility. *See United States v. Hansen,* 955 F.Supp. 1225 (D.Mont.1997); *United States v. Haworth,* 168 F.R.D. 660, 661 (D.N.M.1996); *but see United States v. Doyle,* 1 F.Supp.2d 1187 (D. Or.1998)[6].

**4.** In *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) the Supreme Court considered, but was unable to resolve, whether a defendant's Sixth Amendment right to confrontation grants pretrial discovery rights to defendants. Four justices held that it did not. *Id.* at 52–54, 107 S.Ct. 989 (opn. of Powell, J., concurred in by Rehnquist, C.J., White, and O'Connor, JJ.). Three justices indicated that in some circumstances the confrontation clause could be violated if a defendant was denied pretrial access to information necessary to make cross-examination effective. *Id.* at 61–66, 107 S.Ct. 989 (conc. opn. of Blackmun, J.); *id.* at 66–72, 107 S.Ct. 989 (dis. opn. of Brennan, J., concurred in by Marshall, J.) The remaining two justices did not reach the issue. In *Davis v. Alaska*, 415 U.S. at 320, 94 S.Ct. 1105 (1974), the Supreme Court had held that the defendant's right to confront a key prosecution witness can trump state policy interests in maintaining confidentiality of otherwise privileged information about those witnesses, and reversed the convictions of a petitioner who had not been allowed to impeach a key prosecution witness' testimony with information about that witness' probationary status as a juvenile delinquent.

**5.** The *Doe* case is particularly factually applicable to defendant's case as the key witness against the defendant in the underlying criminal case had a history of mental illness. *Id.* at 1329. Appellant in that case, the government witness, refused to fully disclose his mental health records to the defense, to answer questions on the stand regarding his mental health, or to allow his psychiatrist to testify regarding appellant's mental condition. *Id.* at 1325–27. The Second Circuit Court of Appeals upheld the District Court's ruling that appellant was in contempt of court for refusing to answer the questions, and adopted the psychotherapist-patient privilege. The Second Circuit's interpretation of Federal Rule of Evidence 501 was similar to that later utilized by the Supreme Court in *Jaffee*. *Id.* at 1329. The Second Circuit further held that an in camera review of the mental health records subject to a protective order was appropriate give the circumstances. *Id.*

**6.** In *Doyle*, the court quashed two subpoenas for mental health records issued by the defendant to the victim's psychologist and licensed clinical social worker, holding that *Jaffee* precluded disclosure of the records. *Id.* at 1191. Defendant had pled guilty to rape, and the government sought an upward enhancement of his sentence based on the extreme psychological injury of the victim, whom the government intended to call to

The *Hansen* and *Haworth* courts both appear to have conducted some sort of balancing or in camera review of the requested documents in order to determine their potential relevance and probative value in light of the criminal context of the cases. *See United States v. Hansen,* 955 F.Supp. at 1226; *United States v. Haworth,* 168 F.R.D. at 661.

Evidence of the Inspector's mental health could be material to defendant's claim that she began the physical altercation, as well as to her credibility as the government's key witness against him. The United States points out that several other witnesses will testify that they also witnessed the altercation, and attached police reports describing those witnesses versions of the events to its motion. However, it is unclear whether those witnesses actually saw or heard the beginning of the altercation, and the Inspector's testimony will be the principal testimony against defendant.

While the Inspector clearly has a strong interest in keeping her communications with her psychiatrist confidential, the potential evidentiary benefit and materiality of those records to defendant's claim of self-defense mandates that I conduct an in camera review of the records.[7] The government **IS HEREBY ORDERED** to produce those records for an in camera review by **12:00 p.m. on Wednesday, January 17, 2001.** Following the review, I will issue a further ruling prior to the commencement of trial on January 22, 2001.

---

testify at the sentencing hearing. *Id.* at 1188–1189. As the psychotherapist-patient privilege arose in *Doyle* in the context of a sentencing hearing, where that defendant had already pled guilty, it is distinguishable from this case, where defendant seeks access to the complaining witness' records in an attempt to support his claim of self defense. To the extent that *Doyle* suggests a different conclusion as to the scope of the privilege, the ruling is not binding and I respectfully decline to follow it.

7. The government argues that a subpoena duces tecum cannot be used as a discovery devise in criminal cases. However, pretrial production of documents pursuant to such a subpoena is appropriate where those documents are (a) evidentiary and relevant, (b) not otherwise procurable in advance of trial, (c) necessary for proper preparation for trial, and (d) sought in good faith. *United States v. Nixon,* 418 U.S. 683, 699–700, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). I find that the Inspectors records meet all of these criteria.