**Gilda TESSER, Plaintiff,**

v.

**BOARD OF EDUCATION, etc., et al., Defendants.**

**No. CV97–6719NGGMDG.**

United States District Court, E.D. New York.

April 16, 2001.

Douglas J. Good, Ruskin, Moscou, Evans & Faltischek, P.C., Mineola, NY, for Plaintiff.

Vivian Yuan, City of New York Corporation Counsel, New York City, Donald C. Sullivan, Corporation Counsel of the City of New York, Law Department, New York City, Barbara A. Jaccoma, Ball Livingston, L.L.P., Brooklyn, NY, for Defendants.

## ORDER

GO, United States Magistrate Judge.

Plaintiff Gilda Tesser brings this action pursuant to various federal, state and local laws claiming discrimination in employment and retaliation. Her husband, Bruce Kavitsky, has moved to quash a *subpoena duces tecum* served upon Dr. Peritz Levinson, Mr. Kavitsky's former psychiatrist, for disclosure of facts concerning plaintiff contained in Dr. Levinson's treatment notes for Mr. Kavitsky. Since the claims in this action have been the subject of decisions on two motions to dismiss as well as numerous discovery rulings, only the facts pertinent to this motion are recounted herein.

Mr. Kavitsky underwent a course of psychotherapy with Dr. Levinson from the summer of 1992 until 1996. Affidavit of Bruce Kavitsky dated January 25, 2001 ("Kavitsky Aff.") at 3, 4, ¶¶ 5, 11. Mr. Kavitsky testified in his deposition that around late July, 1992, he observed his wife "showing signs of depression" and consulted with Dr. Levinson on how he "could help her to deal with it." Sept. 20, 2000 Deposition of Bruce Kavitsky ("Kavitsky Dep."), attached as Exhibit B to Declaration of Assistant Corporation Counsel Donald C. Sullivan ("Sullivan Decl."), at 491–92. On September 9, 1992, Mr. Kavitsky and his wife decided she should seek professional help due to "severe emotional distress" after an incident involving defendant Michael Miller the day before. Kavitsky Aff. at 4, ¶¶ 9–10.

Mr. Kavitsky called Dr. Levinson and arranged for an appointment for his wife. Kavitsky Dep. at 499–500. Dr. Levinson met with plaintiff once and referred her for admission into New York Hospital. Kavitsky Aff. at 4, ¶ 10.

Mr. Kavitsky later received a request from an employee of the defendant Board of Education for a "line-of-duty injury" letter with respect to his wife's claimed disability. Kavitsky Dep. at 503–04. In response to plaintiff's request for such a letter, Dr. Levinson prepared a letter dated October 13, 1992 ("October Letter") addressed to the Board. Kavitsky Aff. at 4, ¶ 10. Dr. Levinson stated in his letter that plaintiff had "trauma and severe anxiety brought about ... by her employer [which] reached a disabling condition...." See Exh. E attached to Sullivan Decl. Dr. Levinson also noted in the letter that he interviewed plaintiff on September 9, 1992

and "ha[s] heard from her spouse on a regular basis about her situation." *Id.*

Dr. Levinson apparently took no notes of his consultation with Ms. Tesser but testified that he reviewed his treatment notes of Mr. Kavitsky prior to a deposition held on August 2, 1999. August 2, 1999 Deposition of Dr. Peritz Levinson ("Levinson Dep."), attached as Ex. C to Sullivan Decl., at 9. When plaintiff's counsel objected to defendants' demand for a copy of the notes, the deposition continued. *Id.* Over a year later at the continuation of his deposition, Dr. Levinson, who attended that further deposition only after being ordered to do so by the Court, had not reviewed his notes, and had little recollection of the pertinent facts. *See, e.g.,* Dec. 2, 2000 Deposition of Peritz Levinson, attached as Exhibit C to Sullivan Decl., at 14, 16, 22, 26–27, 30–32. Defendants renewed their request for Dr. Levinson's notes at a court conference on December 7, 2000. The Court authorized service of a subpoena for treatment notes limited to facts pertaining to Ms. Tesser's condition for the period from March 8, 1992 (six months before the consultation) through October 13, 1992.

Mr. Kavitsky objects to the subpoena on grounds that the information sought is protected by the psychotherapist-patient privilege and not relevant, and that defendants are not entitled to disclosure due to their "outrageous conduct" during the proceedings in this case.

## DISCUSSION

In *Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), the Supreme Court recognized a federal common law privilege [1] that protects psycho-

---

1. Federal privilege law generally applies to all federal question cases. *Kaufman v. Edelstein,* 539 F.2d 811 (2d Cir.1976). Where an action involves both federal and state law claims, courts have ordinarily held that privileges are determined under federal law. *See, e.g., Han-*

therapist-patient communications. Although declining to "delineate [the] full contours" of the psychotherapist privilege, 518 U.S. at 19, 116 S.Ct. 1923, the *Jaffee* Court broadly described the privilege as protecting "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment." 518 U.S. at 15, 19, 116 S.Ct. 1923.[2] Finding that effective psychotherapy "depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears," the Court concluded that "protecting confidential communications between a psychotherapist and her patient outweigh[s] the need for probative evidence." *Id.* at 9–10, 116 S.Ct. 1923.

In reaching this holding, the Court found significant the unanimity of opinion among state courts and legislatures in recognizing a psychotherapist privilege and the fact that such a privilege was one of the nine privileges recommended by the Judicial Conference Advisory Committee to be incorporated in the proposed Federal Rules of Evidence. *Jaffee*, 518 U.S. at 10, 14–15, 116 S.Ct. 1923. As the Court emphasized, the acceptance of such a privilege stems from " 'wide agreement that confidentiality is a *sine qua non* for successful psychiatric treatment.' " *Id.* at 10–

11, 116 S.Ct. 1923 (quoting Advisory Committee's Notes to Rule 504 to the Proposed Rules of Evidence for United States Courts and Magistrates, 56 F.R.D. 183, 242 (1972) (the "proposed rule")).

▆▆▆▆ As described in *Jaffee*, a party asserting the privilege must establish that (1) confidential communications were made (2) between a licensed psychotherapist and her patient (3) in the course of diagnosis or treatment. *See In re Grand Jury Proceedings (Violette)*, 183 F.3d 71, 73 (1st Cir.1999). As a general rule, the burden rests upon the party claiming a privilege. *Cf. In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2nd Cir.2000) (burden of establishing the existence of an attorney-client privilege rests with the party asserting it). However, this Court is mindful of the fact that Mr. Kavitsky is not a party, albeit clearly not a disinterested person to this litigation. Although his non-party status does not result in a tempering of his burden to establish the existence of the privilege, it is a consideration that this Court weighs seriously in determining the scope of the privilege and considering the relevance of the information sought.

In the present circumstances, there is no question that Mr. Kavitsky was receiving treatment from a licensed psychotherapist, Dr. Levinson, and that his wife, the plaintiff, has waived her claim of privilege with

---

cock v. Dodson, 958 F.2d 1367, 1373 (6th Cir.1992); *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir.), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *Scott v. Edinburg*, 101 F.Supp.2d 1017, 1019 n. 2 (N.D.Ill.2000) (noting Supreme Court in *Jaffee* applied federal common law). The *Jaffee* court declined to address this issue which had not been directly raised in the case. *Jaffee*, 518 U.S. at 16, n. 15, 116 S.Ct. 1923.

**2.** Prior to *Jaffee*, the Second Circuit recognized a more limited psychotherapist-patient privilege. *See In re Doe*, 964 F.2d 1325 (2d Cir.1992). The Supreme Court in *Jaffee* re-

jected the Second Circuit's approach that "[t]he privilege is highly qualified and requires a case-by-case assessment of whether the evidentiary need for the psychiatric history of a witness outweighs the privacy interests of that witness." *Jaffee*, 518 U.S. at 17–18, 116 S.Ct. at 1932; *see also In re Doe*, 964 F.2d at 1328; *Doolittle v. Ruffo*, 1997 WL 151799, at *1 (N.D.N.Y. March 31, 1997). The *Jaffee* court explained that this balancing test "[w]ould eviscerate the effectiveness of the privilege." *Jaffee*, 518 U.S. at 17–18, 116 S.Ct. at 1932; *Doolittle*, 1997 WL 151799, at *1.

regard to her consultation with Dr. Levinson (as well as with other psychiatrists), as she has conceded. Rather, the issues here are whether the communications reflected in the notes are confidential and made in the course of Dr. Levinson's treatment of Mr. Kavitsky. These issues are of particular significance because Dr. Levinson kept no notes of his interview with Ms. Tesser. Moreover, as reflected Dr. Levinson's letter dated October 13, 1992 which was later submitted to the defendant Board on Ms. Tesser's behalf, Dr. Levinson based his opinions expressed in that letter on information obtained from Mr. Kavitsky "on a regular basis about her situation." *See* Exh. E to Sullivan Decl. Further, Dr. Levinson apparently no longer has a recollection of the factual events surrounding the preparation of the letter and the details of his consultation.

Thus, because only confidential communications made to psychotherapists may be privileged, this Court must first determine whether the communications at issue are confidential. Proposed Rule 504 of the Federal Rule of Evidence defines a communication to a psychotherapist as "confidential" if it is "not intended to be disclosed to third persons other than those present to further the interest of the patient in the consultation, examination, or interview, or person reasonably necessary for the transmission of the communication, or persons who are participating in the

diagnosis and treatment under the direction of the psychotherapist." Proposed Rule 504(a)(3), 56 F.R.D. 183, 240–41 (1972).[3]

Consonant with this definition, courts considering whether communications between a patient and psychotherapist are confidential have focused on the expectation of disclosure. These courts have ordinarily addressed this issue in the context of consultations made in the course of employment and have held that communications with a psychotherapist during consultations required as a condition of employment are not privileged because there is no expectation of privacy. *See, e.g., Phelps v. Coy*, 194 F.R.D. 606 (S.D.Ohio 2000) (no privilege where there was no expectation of confidentiality because party knew therapist's evaluations would be submitted to an employer); *Scott v. Edinburg*, 101 F.Supp.2d 1017 (N.D.Ill.2000) (treating knowledge that communications would be shared as others as a waiver); *Barrett v. Vojtas*, 182 F.R.D. 177 (W.D.Pa. 1998) (communications made during counseling required by employer and reports submitted to employer not privileged); *Kamper v. Gray*, 182 F.R.D. 597 (E.D.Mo. 1998) (privilege did not exist for therapist's evaluation when it was to be submitted to employer); *see also Revelle v. Darby Borough Police Officer Trigg*, 1999 WL 80283 (E.D.Pa. Feb. 2, 1999) (evaluations of non-party officers required for employ-

---

**3.** While not expressly adopting the formulation of the rule as proposed by the Advisory Committee, the *Jaffee* Court clearly placed weight on the fact that the proposed rules had been promulgated by the Judicial Conference Advisory Committee of Rules of Evidence and approved by the Judicial Conference of the United States and by the Supreme Court. *Jaffee*, 518 U.S. at 14–15, 116 S.Ct. 1923. The Court also noted that the Senate Judiciary Committee, in rejecting Proposed Rule 504 in favor of the more open-ended Rule of Evidence 501, explicitly stated that its action

"should not be understood as disapproving any recognition of a psychiatrist-patient ... privileg[e] contained in the [proposed] rules." *Id.* at 18, 116 S.Ct. 1923 (quoting S.Rep. No. 93–1277 at 131 U.S.Code Cong. & Admin.News 1974, pp. 7051, 7059). Other courts have also looked to the proposed rules for guidance in recognizing new privileges and developing the contours of existing privileges. *See* Jack B. Weinstein & Margaret Berger, *Weinstein's Federal Evidence,* at § 504.02 (2d ed.1998).

ment not privileged); *D'Antoni v. Roach,* 1997 WL 627601 (E.D.La. Oct 10, 1997) (police reports assessing psychological fitness of officers based on interviews did not contain confidential communications and were therefore not privileged); *Siegfried v. City of Easton,* 146 F.R.D. 98, 101 (E.D.Pa.1992) (communication which patient reasonably expects to be disclosed to a third party not involved in the patient's treatment not protected by the psychologist-patient privilege). *But see Williams v. District of Columbia,* 1997 WL 224921 (D.D.C. Apr.25, 1997) (privilege upheld where there was an expectation of privacy and no confidences revealed by psychotherapist who merely opined whether officer fit for duty); *Caver v. City of Trenton,* 192 F.R.D. 154 (D.N.J.2000) (same).

■ The limited record before the Court contains evidence to support Mr. Kavitsky's claim that he had every expectation that his statements would be kept private on many, if not all, of the occasions he discussed his wife's condition with Dr. Levinson. However, the expectation of confidentiality is not dispositive of whether a communication between a patient and psychotherapist is privileged—*Jaffee* requires that the communications also be made "in the course of treatment." 518 U.S. at 15, 116 S.Ct. 1923.

The Court in *Jaffee* addressed the need for confidentiality in the context of treatment of the patient making the statements about himself and his condition. Besides noting the public interest in "facilitating the provision of appropriate treatment for individuals suffering the effects of mental or emotional problems," the Court specifically referred to the need to insulate statements necessary for treatment made by patients about themselves:

> Without a privilege, most of the desirable evidence to which litigants such as petitioner seek access—for example, ad-

missions against interest by a party—is unlikely to come into being.

*See Jaffee,* 518 U.S. at 14–15, 116 S.Ct. 1923.

■ The proposed rule more explicitly limits the psychotherapist privilege to communications made for the patient's treatment or for others being treated by the psychotherapist than this language in *Jaffee.* The rule proposed provided that:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of his mental or emotional condition, including drug addiction, among himself, his psychotherapist ... or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family.

Proposed Rule of Evidence 504(b), 56 F.R.D. at 241. In other words, whether the privilege attaches requires consideration of the nature, timing and the purpose of the communication.

As Mr. Kavitsky testified in his deposition, he began seeking advice from Dr. Levinson on how to assist his wife in dealing with her problems—which suggests that at least in part these conversations did not form part of Mr. Kavitsky's treatment. Kavitsky Dep. at 491–92. Mr. Kavitsky's only response is to point angrily to defendants' attempt at a fishing expedition and failure to "document these alleged extra-therapeutic discussions." Reply Affidavit of Kavitsky at ¶¶ 3 – 6. This response overlooks the fact that he bears the burden of showing applicability of the privilege, and that Dr. Levinson later disclosed the substance of at least some of these discussions in the letter to the plaintiff's employer. Thus, based on Mr. Kavitsky's own testimony, it appears that at least

some of the statements about his wife that he made to Dr. Levinson did not relate to his own treatment, but instead related to the practical, medical or psychological treatment of his wife, who was not then under Dr. Levinson's care.

■ However, given the special need for confidentiality giving rise to the psychotherapist privilege, the content of a communication alone should not necessarily determine whether this privilege attaches. Unlike the attorney-client privilege which shields certain communications from disclosure based on their substance, the psychotherapist privilege is designed to protect the "development of the confidential relationship necessary for successful treatment." *Jaffee*, 518 U.S. at 10, 116 S.Ct. 1923; *see* Advisory Committee's Note to proposed rule, 56 F.R.D. at 243 ("basic differences between the two relationships forbid resorting to attorney-client [as an analogous privilege] save as a helpful point of departure"). As this Court previously ruled in authorizing defendants to subpoena Dr. Levinson's notes, disclosure will be limited to Mr. Kavitsky's factual observations concerning his wife's condition—precisely the statements upon which Dr. Levinson relied in writing the October Letter. This Court further ruled that the notes, with proposed redactions, are first to be submitted for *in camera* review to insure that these factual matters do not contain confidential patient-psychiatrist communications. *Cf. United States v. Zolin*, 491 U.S. 554, 574, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (court may conduct an *in camera* review of apparently privileged attorney-client communications to determine whether the crime-fraud exception is applicable).

To be sure, Mr. Kavitsky's account of his own feelings and emotions concerning his wife that he related to Dr. Levinson need not be disclosed. In addition, if the Court, upon review of Dr. Levinson's notes, determines that it is difficult to differentiate whether or not the statements were made solely to obtain personal advice regarding the plaintiff, then the Court will conclude that they were made in the course of treatment and may not be disclosed. On the other hand, if the notes indicate that the statements were not made in connection with Mr. Kavitsky's treatment, or if Mr. Kavitsky made further statements to Dr. Levinson which reflect his intention that they be used in, or as a basis for, Dr. Levinson's October Letter, then disclosure clearly is appropriate.

■ Such a result also comports with basic notions of fairness in litigation. Plaintiff has listed the letter prepared by Dr. Levinson on her list of exhibits in the Joint Pretrial Order and her mental and emotional condition in the summer of 1992 and her hospitalization at New York Hospital in September undoubtedly will be the subject of testimony by plaintiff and other witnesses, including Mr. Kavitsky, who is also listed on plaintiff's witness list. The factual basis for Dr. Levinson's decision to admit plaintiff and for his letter opining as to her condition clearly are relevant to the claims in this case. But, as set out above, Dr. Levinson kept no notes of his consultation with the plaintiff and now has little recollection of the events relating to this matter. Moreover, the letter sent to plaintiff's employer explicitly states that Dr. Levinson's conversations with Mr. Kavitsky form part of the basis for his understanding of the plaintiff's condition expressed in that letter. Had Mr. Kavitsky not been a patient of Dr. Levinson, the doctor presumably would have had notes of his consultation with plaintiff.

Moreover, plaintiff retained an attorney in 1992 and filed an administrative complaint with the Chancellor of the defendant Board on July 7, 1992 which led to a

referral to the Special Commissioner of Investigation for the New York School District. Even though no lawsuit had yet been commenced, Mr. Kavitsky should have been aware when he began seeing Dr. Levinson that his wife's problems vis à vis the defendants could lead to litigation or, at the very least, some sort of administrative proceeding. Mr. Kavitsky was also undoubtedly aware of the circumstances leading to the submission of Dr. Levinson's letter to the defendant Board and was, in fact, the person who received a call from Board personnel requesting such a letter. That Dr. Levinson would, in his letter, expressly refer to statements made by Mr. Kavitsky is hardly surprising, given the short counseling session that Dr. Levinson had with plaintiff before arranging for her hospital admission.

■ Since the only documentary support for Dr. Levinson's assessment of the plaintiff would be contained in his notes of his sessions with her husband, full and fair disclosure of the factual basis of the letter would be required. *See, e.g., E.E.O.C. v. Danka Industries, Inc.*, 990 F.Supp. 1138, 1142 (E.D.Mo.1997). No discovery rule in

the Federal Rules of Civil Procedure requires that a party accept, without seeking corroborating or impeaching evidence, its opponent's version of the facts. Defendants likewise should not be limited to accepting only Mr. Kavitsky's testimony as to his observations of his wife's condition, especially since Mr. Kavitsky clearly has a community of interest with his wife,[4] irrespective of his independent reasons for preventing disclosure of certain comments he may have made about his wife to Dr. Levinson. Insofar as such comments are simply factual observations which may tend to conflict with plaintiff's or Mr. Kavitsky's account of the events from 1992, there is all the more reason for disclosure. And, as noted above, comments reflecting his emotional state will be shielded from disclosure.

■ Finally, without dwelling on the substance of Mr. Kavitsky's charge that defendants are not entitled to disclosure because of outrageous conduct, the Court disagrees. From the vantage point of having supervised this litigation since its commencement, aggressive litigation tactics have been the mainstay of plaintiff's approach to this matter, not defendants'.[5]

---

**4.** The *Jaffee* Court also noted that, as with other testimonial privileges, the psychotherapist-patient privilege may be waived by the patient. 518 U.S. at 15 n. 14, 116 S.Ct. 1923. Generally, a patient waives the psychotherapist-patient privilege by raising his mental condition as an element of his claim or defense. *See* 3 Weinstein's Federal Evidence, §§ 504.01, 504.07(7) (2d ed.1997) (citing Supreme Court Standard 504). Examples of waiver include a civil plaintiff who brings a claim for emotional distress and a criminal defendant who pleads insanity. *Id.* § 504.07(7). *See, e.g., Karl v. Asarco Inc.*, 166 F.3d 1200, 1998 WL 916517, *2 (2nd Cir. 1998) (unpublished opinion) (plaintiff claiming employment discrimination waived his privilege by putting his mental state into issue); *McKenna v. Cruz*, 1998 WL 809533 (S.D.N.Y. Nov. 19, 1998); *United States v. Sturman*, 1998 WL 126066 at *3 (S.D.N.Y.

March 20, 1998); *Kerman v. City of New York*, 1997 WL 666261 at *3 (S.D.N.Y. Oct.24, 1997) (by placing his mental and emotional condition at issue, plaintiff waives the psychotherapist-patient privilege); *Doolittle v. Ruffo*, 1997 WL 151799 at *2 (N.D.N.Y. March 31, 1997) (plaintiff waived psychotherapist-patient privilege by placing mental and emotional condition at issue and by notifying court that she intended to call a psychotherapist as an expert witness). Although waiver ordinarily has been applied to litigants claiming a privilege, underlying this exception is again the notion of fairness that a litigant cannot use an evidentiary privilege both as a sword and a shield. *See United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.), *cert. denied*, 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991).

**5.** *See, e.g.*, endorsed order dated March 6, 2000 criticizing plaintiff's counsel for failing

Far from being untempered and overly combative, defendants' counsel have, for most of this case, suffered from the all too common affliction besetting government attorneys—having too few resources and too many cases to counter the tremendous expenditure of time and effort by plaintiff's counsel in this action. Defendants have too frequently been tardy in responding to discovery requests, which plaintiff predictably followed with an immediate motion to compel. At the same time, plaintiff's vigorousness in resisting disclosure of information that this Court has consistently ordered to be disclosed necessitated motions on the part of defendants. Given the tenor of the litigation as set primarily by plaintiff, professional courtesies have been sadly lacking and meaningful attempts at resolution required under Rule 37 became impossible.

A tough litigation stance fueled by superior resources in the hands of a private litigant is, of course, a reality which this Court cannot hold against plaintiff or her husband. Nor may the Court be led astray by whatever sympathy it holds for the situation of government attorneys; a litigant's discovery responsibilities under the Federal Rules of Civil Procedure and the professional obligations of counsel ultimately control. Because discovery is finally at its close, little more need be stated than that the Court has not observed conduct by defendants warranting preclusion of discovery to which they otherwise would be entitled.

### CONCLUSION

For the foregoing reasons, the application to quash the subpoena *duces tecum* is denied, but disclosure of the notes is conditionally granted subject to the following.

---

to reveal that cancellation of defendant Weber's deposition was due to a cardiac condi-

lowing. As set out in the Court's order of December 7, 2000, only factual information concerning plaintiff should be provided to defendants and all other information (including, but not limited to, treatment information, diagnoses, and factual information not concerning plaintiff) may be redacted. Prior to such disclosure, the said documents are to be delivered to Mr. Kavitsky's counsel for review for a preliminary determination as to appropriate redactions and then forwarded to the Court for *in camera* review with suggestions for redaction. The Court will then determine what part of the documents, if any, may be disclosed to defendants. Any documents ordered to be disclosed will be subject to the terms of the confidentiality order previously entered herein.

SO ORDERED.